**S. Z. HAIDRI, Plaintiff-Appellant,**

v.

**Daniel L. EGOLF and Danny L. Anglin, Defendants-Appellees.**

No. 3–181A29.

Court of Appeals of Indiana, Third District.

Jan. 28, 1982.

**430**

Jon E. Newcomb, Newcomb & Beeson, Bremen, for plaintiff-appellant.

R. Michael Parker, Samuel S. Thompson, Thornburg, McGill, Deahl, Harman, Carey & Murray, Elkhart, for defendants-appellees.

GARRARD, Judge.

On February 10, 1975 at about 3:50 p.m. the appellant Haidri's automobile was struck from the rear by a tractor-trailer owned by Danny Anglin and operated by Daniel Egolf. Haidri brought suit for personal injuries alleging that Egolf had been negligent. Trial by jury commenced on July 1, 1980. At the conclusion of plaintiff's evidence the court granted the motions of both defendants for judgment on the evidence pursuant to Indiana Rules of Procedure, Trial Rule 50. From that judgment Haidri appeals.

The only question raised on appeal is whether the court erred in granting judgment on the evidence. We conclude it did not. We therefore affirm.

A judgment on the evidence in favor of the defendant deprives the plaintiff of a jury decision concerning the assertedly wrongful conduct of a defendant. *Mamula v. Ford Motor Co.* (1971), 150 Ind.App. 179, 275 N.E.2d 849, 852. Accordingly, statements such as those employed in *Ortho Pharmaceutical Corporation v. Chapman* (1979), Ind.App., 388 N.E.2d 541, 544 typify our expression of the trial court's obligation in ruling upon such motions:

"The rule in Indiana with respect to motions pursuant to TR 50, for judgment on the evidence, is that such a motion may properly be granted only if there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof. When considering a motion for judgment on the evidence, the trial court must consider only the evidence and reasonable inferences favorable to the non-moving party. *Huff v. Travelers Indem. Co.* (1977), Ind., 363 N.E.2d 985; *American Turners of South Bend v. Rodefer* (1978), Ind.App., 372 N.E.2d 516. The motion must be denied 'where there is *any* evidence or legitimate inference therefrom tending to support at least one of the allegations. Where the evidence is such that the minds of reasonable men *might* differ, a directed verdict is improper, and the resolution of conflictive evidence is for the jury.' (Original emphasis). *Vernon Fire & Casualty Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173, 179."

The purpose of such statements is to emphasize that it is not the function of a trial judge to *weigh* the evidence in passing upon a TR 50 motion. The litigants' constitutional right to have a jury determine questions of fact underpins this position.

On the other hand, the law is equally well established that a verdict which could only have been based upon surmise, conjecture or speculation as to one or more of the necessary elements of a claim should not be permitted to stand. *McKeown v. Calusa* (1977), 172 Ind.App. 1,

359 N.E.2d 550, 553; *see also Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785. That is simply to say that there must be evidence in the record which, if believed, is sufficient to establish all the facts necessary for a recovery. Where the evidence is direct the court has little difficulty because the question is clearly one of credibility. Where, however, the evidence is circumstantial the ruling on a TR 50 motion may be indeed exacting. The question then becomes the *reasonableness* of the sought-for inference. Posed in the context of this case the issue is whether the evidence before the court when the motion was made [1] was sufficient to create a reasonable inference of negligence on the part of the defendants, or whether the necessary inference of negligence was unreasonable in the sense that it could exist only as a matter of surmise, conjecture or speculation. In the latter instance judgment on the evidence would be proper.

The evidence introduced at trial disclosed that U. S. Highway 30 is a four lane divided highway running in a general east-west direction near the City of Warsaw. On the east side of Warsaw the highway is intersected by a two lane road referred to as "old road 30" on the north and the entrance to a shopping center on the south. The collision occurred east of this intersection in the westbound portion of the highway in the passing, or inside, lane.

The Haidri family was staying in a motel which was situated on the north side of U. S. 30 and east of the intersection referred to above. On the afternoon in question Haidri intended to drive to the shopping center located on the south side of U. S. 30 at the intersection with old road 30. To do so required making a right turn onto U. S. 30, proceeding west to the intersection and across the two westbound lanes and then making a left turn, crossing the eastbound lanes and entering the shopping center. As one approaches the intersection there is a third, or exit, lane for traffic desiring to make a left turn.

On direct examination Haidri testified that as he left the motel driveway he stopped before entering either of the westbound lanes of U. S. 30. He stated that in looking for oncoming vehicles he was concentrating on the left lane and "had no recollection of seeing any traffic in that lane." He did not recall specifically whether there was traffic in the right lane. On cross-examination he stated that he had no "recollection of seeing anything" on the road in "at least a portion that I would have considered hazardous for my crossing. There was nothing in that area." Haidri then drove from the motel driveway, across the right lane, and proceeded west in the left, or passing, lane toward the intersection. As Haidri was about to move into the exit lane, he heard his son, who was in the back seat of the automobile, say "Daddy, he's not stopping." Haidri heard the "beep" of a horn and then the collision occurred. Haidri stated that at the moment of collision a truck passed in the right lane. Haidri estimated that the impact caused his car to move forward approximately 300 feet. He parked the automobile on the berm on the north side of U. S. 30.

A diagram depicting the scene was introduced into evidence. Haidri estimated the distance between the motel driveway and the intersection to be 500 feet and indicated that the collision occurred approximately one third of the distance from the motel driveway to the intersection.

Photographs taken by the investigating police officer and introduced into evidence show extensive damage to the rear of Haidri's automobile. Any damage to the tractor-trailer was not visible from the perspective of the photographs.

Haidri's wife was also in the automobile and testified that they stopped and looked before entering U. S. 30. She observed traffic in the right, or driving, lane, but not in the left lane. Once they were in the left lane she estimated their speed to be 35 to 45

1. Of course, where there is conflicting evidence, the court must consider the evidence most favorable to the non-moving party.

miles per hour. She also heard the horn "beep" prior to the collision and observed a truck pass on the right at the time of the accident, the speed of which she estimated at 60 miles per hour.

The investigating police officer testified that the point of impact was 350 to 400 feet east of where the Haidris' automobile was parked when he arrived on the scene. He stated that at the time of the accident the intersection was controlled by flashing yellow lights and the speed limit was 55 miles per hour.

The owner of the truck, Danny Anglin, testified that depending on the weather conditions and traffic, the intersection could be hazardous.

No other evidence was introduced that bore upon how the collision occurred or what the truck was doing at or prior to the collision.

■ We first note that in the absence of the special circumstances necessary to invoke the doctrine of *res ipsa loquitur*, the mere happening of an accident or occurrence of an injury does not raise any presumption or authorize an inference of negligence. *Krohn v. Shidler* (1966), 140 Ind. App. 175, 221 N.E.2d 817, 822. Furthermore, and contrary to some popular mythology, no reasonable inference that the rearward driver was negligent is created simply through the occurrence of a rear end collision. *Taylor v. Fitzpatrick* (1956), 235 Ind. 238, 132 N.E.2d 919; *Hoesel v. Cain* (1944), 222 Ind. 330, 53 N.E.2d 165; *Dimmick v. Follis* (1953), 123 Ind.App. 701, 111 N.E.2d 486.

Haidri cites several automobile rear end collision cases in which it was determined that a reasonable inference of negligence was available and the case should therefore have gone to the jury. We find in each, however, certain facts which distinguish it from the record before us.

In *Zink v. Radewald* (7th Cir. 1966), 369 F.2d 253 the plaintiff was stopped in a line of traffic, the defendant had been following her for at least three blocks and had an unobstructed view. In *Taylor v. Fitzpatrick*, supra, the defendant in broad daylight with an unobstructed view and dry pavement simply drove into the rear of plaintiff's vehicle, which was properly parked at the curb. In *Gurczak v. Hutter* (1963), 136 Ind.App. 156, 188 N.E.2d 549, the defendant testified, admitted he had been drinking, and admitted that prior to the collision he observed neither the plaintiff's auto nor a stop sign, both of which were plainly visible. In *Hall v. Guthery* (1960), 130 Ind.App. 624, 163 N.E.2d 752, the collision occurred in plaintiff's decedent's lane as the defendant attempted to pass him. There was evidence of defendant's intoxication and of charges of recklessness made against him in his presence by the decedent, to which he offered no response.

■ In contrast to these situations, by his own testimony Haidri entered the highway and crossed the driving lane into the passing lane, all in a few seconds before the collision occurred. There was no direct evidence as to where the truck was prior to the collision or what its driver was doing. From Haidri's testimony it might be inferred that when Haidri looked east before entering the highway the truck was in the driving lane. Either that or Haidri simply failed to observe it. Nothing establishes when or why the truck changed lanes or how it was being operated [2] up to the point of collision. Certainly the record does not preclude the notion that Egolf was negligent. On the other hand, based upon the evidence adduced, any finding that he was in fact negligent would necessarily be the result of surmise and conjecture. It follows that the court did not err in granting the judgment.

Affirmed.

HOFFMAN, P. J., and STATON, J., concur.

---

2. The driver, Egolf, was not called as a witness.