REMINGTON FREIGHT LINES, INC., and Richard Barbour, individually and as agent for Remington Freight Lines, Inc., Appellants–Defendants,

v.

Julie LARKEY, Personal Representative of the Estate of John McClanahan, Appellees–Plaintiffs.

No. 79A02–9306–CV–294.

Court of Appeals of Indiana, Second District.

Dec. 29, 1994.

Opinion Correcting Decision on Denial of Rehearing April 4, 1995.

asset schedule cannot raise equitable estoppel as a bar to a subsequent suit. 109 B.R. at 376, n. 2.

Jeffrey J. Newell, Cheryl M. Knodle, Ball Eggleston Bumbleburg & McBride, Lafayette, for appellants.

Margret G. Robb, James R. Toombs, Bartlett, Robb & Sabol, Lafayette, for appellees.

## OPINION

SULLIVAN, Judge.

John McClanahan (McClanahan) originally filed suit against Remington Freight Lines, Inc. (Remington), and Richard Barbour, Remington's safety director.[1]  McClanahan, who was employed as a truckdriver, claimed that Remington wrongfully discharged him in retaliation for his refusal to violate Illinois law by driving his truck through the state with a load greater than the statutory maximum 73,280 pound weight limit.  Upon appeal of both parties' motions for summary judgment, the Indiana Supreme Court held that McClanahan did possess a cause of ac-

---

1.  Barbour is only a nominal party to this appeal, as the trial court granted a directed verdict in Barbour's favor upon the premise that, in firing McClanahan, he acted wholly within the scope of his employment.

tion for retaliatory discharge, though he was an employee-at-will and was hired for no specific time period. *McClanahan v. Remington Freight Lines, Inc.* (1988) Ind., 517 N.E.2d 390 (hereinafter, *McClanahan II* ).[2]

After the court's ruling in *McClanahan II*, trial was held upon the merits of McClanahan's claims. A jury awarded McClanahan $70,000 in damages based upon its finding that he was wrongfully discharged by Remington in retaliation for his refusal to violate Illinois law. On December 9, 1992, after receiving the jury's verdict, Remington timely filed its motion to correct errors in the trial court pursuant to Ind.Trial Rule 59(A)(2). The motion challenged the evidence to support the judgment and, in addition, attacked the damages as excessive. Remington requested, in this regard, for the trial court, at a minimum, to grant remittitur or to order a new trial upon the issue of damages. On January 22, prior to the expiration of its initial 45–day limit, the trial court extended the time period in which it could rule upon the motion, as per T.R. 53.3(D). The trial court then ordered a new trial upon the damages issue. The record reveals that the trial court's ruling upon the motion was "[e]ntered this 1st day of March, 1993, effective February 22, 1993." Record at 617. Before new trial could be held, Remington filed its praecipe for appeal.[3]

Upon appeal, Remington contends the jury verdict is in error. We restate the issues as follows:

(1) Was the trial court's ruling upon Remington's motion to correct errors improper?

(2) Did the trial court properly allow the issue of Remington's liability for McClanahan's wrongful discharge to be decided by the jury?

(3) Were the damages awarded McClanahan by the jury wrongly calculated?

(4) Did the trial court err in refusing Remington's proffered instruction which would have limited McClanahan's recovery to nominal damages?

*Motion to Correct Error*

■ In his appellate brief, McClanahan contends that the trial court's grant of a new trial upon the issue of damages pursuant to Remington's motion to correct errors is invalid. He cites Ind.Trial Rule 53.3(D), arguing that the requisite time period in which the trial court could validly rule upon the motion ended as of February 22, 1993. As the order for new trial was entered on March 1, over a week after the extension ran, McClanahan entreats this court to deem the motion automatically denied as of February 22, and to consider the March 1 entry invalid.[4]

---

**2.** The present action has a long and convoluted history as it has been in some stage of litigation for the past fourteen years. This is the second appeal taken from the trial court. The first appeal arose when McClanahan appealed the trial court's grant of summary judgment in favor of Remington upon the grounds that no cause of action existed. In this court's disposition of that appeal, we determined that a cause of action did exist. *McClanahan v. Remington Freight Lines, Inc.* (1986) 2d Dist.Ind.App., 498 N.E.2d 1336 (hereinafter, *McClanahan I* ). The significance of *McClanahan I* is discussed *infra*.

Remington subsequently appealed our decision upon the motion for summary judgment in *McClanahan I* to the Indiana Supreme Court. The Supreme Court's disposition, in *McClanahan II*, is implicated in this appeal and governs certain of our conclusions.

**3.** One could infer that Remington also examined the possibility that its motion to correct error was deemed automatically denied as of February 22, as its praecipe for appeal was filed within

thirty days of this date, but after the trial court's retroactive order granting new trial upon the issue of damages. Thus, no issue exists as to the propriety of the praecipe, as February 22, 1993 was the earliest possible date which could be considered a "ruling" upon the motion to correct error as per Ind. Appellate Rule 2(A). The issue presented centers only upon the propriety of the trial court's March 1 order.

**4.** We note that Remington has neither acknowledged nor refuted McClanahan's argument that the trial court's ruling upon the motion to correct errors was of no effect. Remington does not attempt to defend the trial court's order. Instead, its argument centers only upon the merits of the jury verdict.

Because Remington presents neither argument nor authority to counter McClanahan's position, it has waived its opportunity to debate the merits of the issue. Even had Remington made an argument, we would nevertheless reach the same conclusion as to the merits of the issue.

T.R. 53.3(A) provides that a motion to correct error will be deemed denied if a trial judge fails to rule upon it "within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required...." This denial is automatic; it is "self-activating upon the passage of the requisite number of days." *Jackson v. Paris* (1992) 1st Dist., 598 N.E.2d 1106, 1107, *trans. denied*, citing *State v. Eaton* (1991) 1st Dist., 581 N.E.2d 956, 959–960, *trans. denied*. T.R. 53.3(D) also allows a trial court, *sua sponte*, to extend its time period for ruling upon a motion to correct error by thirty days.

The question presented is whether the passage of the thirty-day extension may also be a self-executing and automatic denial of the motion to correct error. Employing the oft-used canon that courts must interpret a statute to give effect to the entirety of its language, we examine T.R. 53.3(D) in light of T.R. 53.3(A). Though the trial court may allow for additional time for its ruling, those thirty days are yet confined by the mandates of 53.3(A). The extension therefore affects only the time periods of 53.3(A); it does not effect the consequences of a failure to rule.

Thus, we hold that the consequences of a trial court's failure to rule upon a motion to correct error within an extension are identical to those which occur where no extension has been granted. Once outside the thirty-day extension, the trial court has no power to rule upon the motion, and any ruling thereafter is a nullity. *See Jackson, supra.*

Applying this principle to the present case, we determine that the trial court's ruling upon the motion was, indeed, a nullity.

As per 53.3(D), the trial court properly extended its time period for ruling in an order dated January 22, 1993. Thus, the original time period for ruling did not apply, but was extended by thirty days to expire midnight of February 22, 1993.[5] Here, the trial court entered its order on March 1, 1993, seven days outside the requisite period. Although its order states that the ruling is "effective February 22, 1993," we find no provision of T.R. 53.3 which would confer upon the trial court authority to apply an order retroactively. Indeed, T.R. 53.3 refers to T.R. 53.1(C), which provides that "a court will be deemed to have ruled or decided at the time the ruling or decision is entered into a public record of the court...." Thus, we must and do hold that the order granting new trial is void. Nevertheless, to merely reverse and remand because of the procedural irregularity without addressing the merits of the appeal would be counter-productive. Accordingly, we address the other issues presented.

### Motion for Directed Verdict

Remington claims that the trial court erred when it did not grant judgment upon the evidence upon the issue of retaliatory discharge.[6] Remington directs our attention to two elements of McClanahan's cause of action. It claims that insufficient evidence exists that the act which McClanahan refused to perform would have been a violation of law or that McClanahan would have been subject to personal liability if such violation had occurred.

The test for analyzing a trial court's ruling upon a defendant's motion for judgment upon

---

5. Because T.R. 53.3(D) does not provide a starting point for calculating the passage of the extension, we begin our calculation of the extension upon the day the order was filed. In support of this concept of calculation, we note that the statute provides for "no more" than those thirty days, thus implying that less than thirty days from the end of the original forty-five day period is acceptable. However, another court may interpret the statute to mean that the starting point for calculation is the end of the forty-five day period, and that any extension granted accrues from that point. In the present case, even that calculation could not save the trial court's ruling, as the original forty-five day limit ended only two days after the trial court's extension, on January 24. The thirty days would, in that event, extend until February 24, but would not encompass a March 1 ruling.

6. Remington's argument seems to be something of a hybrid. While attacking the trial court's refusal to take the case from the jury due to insufficient evidence upon two elements, Remington does not mention Ind. Trial Rule 50(A) in its brief. Although Remington never challenges the sufficiency of the evidence head-on, the phrasing of its argument, as well as the case law it cites, leaves little doubt that the basis for challenging the sufficiency of the evidence is the trial court's refusal to grant a judgment upon the evidence.

the evidence is set forth in *Ross v. Lowe* (1993) Ind., 619 N.E.2d 911, 914:

"[t]he court considers only the evidence and reasonable inferences most favorable to the non-moving party. The evidence must support without conflict only one inference which is in favor of the defendant. If there is any probative evidence or reasonable inference to be drawn from the evidence in favor of the plaintiff or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper." (Citations omitted.)

Remington first argues that insufficient evidence was presented from which the jury could infer that McClanahan was ordered to violate the law. It does not deny that McClanahan was fired for refusing to drive his truck through Illinois; instead, it argues that McClanahan did not present facts from which a jury could reasonably infer that the truck he drove would have been in excess of the Illinois statutory weight limit. It argues that the evidence McClanahan presented gave only a vague idea of the vehicle's total weight, and the jury was left to speculate as to the exact weight of the truck, and, therefore, whether it violated Illinois law.

■ In determining whether sufficient evidence was presented upon this issue to avoid judgment upon the evidence, we note that there was evidence presented regarding the weight of the truck. In assessing the weight of the truck, evidence was presented that the minimum weight of an empty vehicle comparable to that driven by McClanahan would have been anywhere from a minimum of 29,000 pounds to a maximum of .33,000 pounds. Additionally, Barbour, Remington's safety director, testified that a reasonably

general guide for the weight of an empty truck would be 31,500 pounds. The jury also heard evidence that the trucks used by Remington weigh "[r]ight around 31,000 pounds." Record at 943. Remington also acknowledges that McClanahan did introduce an exhibit, in the form of a bill of lading, indicating that the freight he picked up weighed 44,800 pounds.[7] McClanahan also introduced evidence regarding the weight and capacity of the truck's fuel.

■ The question thus posed is whether the evidence introduced of the truck's weight was of sufficient probative value to deny judgment upon the evidence. Here, although McClanahan introduced circumstantial evidence of the truck's weight, he introduced no direct evidence.[8] Thus, the jury was required to make an inference regarding a finding of ultimate fact. The question, then, centers upon the reasonableness of the jury's inference. *Haidri v. Egolf* (1982) 3d Dist. Ind.App., 430 N.E.2d 429, 431. While it is neither the function of the trial court upon a Rule 50(A) motion, nor this court upon appeal, to weigh the evidence, our dilemma lies in determining whether the jury's inference that the truck was overweight may be dubbed a "reasonable" one, or whether the inference was so unreasonable as to render it undue speculation. *See Haidri, supra.*

Viewing the evidence in the light most favorable to McClanahan, we must conclude that sufficient evidence was presented from which a jury could reasonably infer, without undue speculation, that the truck McClanahan drove was in excess of the Illinois statutory limit. Adding the truck, which weighed in at a minimum of 29,000 pounds, to the 44,800 pounds of freight, and excluding fuel, the least McClanahan's truck could have

---

7. In its brief, Remington contends that it is "uncontroverted" that a bill of lading is not always accurate. However, we will not beg the question, as Remington neither presents evidence that this bill of lading was inaccurate, nor evidence that McClanahan was ordered to ascertain the weight of the freight due to any perceived inaccuracy. It may have been the case that McClanahan was entitled to rely upon the bill of lading in making a professional judgment as to the weight of his truck. Further, ascertaining the weight and accuracy to be accorded a piece of evidence is within the province of the jury.

8. We note that, although 31,000 pounds was mentioned several times as a general guide, McClanahan did not introduce evidence of the weight of the truck he drove, nor did he introduce evidence of the exact weight of one of Remington's fleet. However, the specificity of this evidence is not at issue; at issue is the reasonableness of the jury's inference that the truck was overweight.

weighed was 73,800 pounds—520 pounds over Illinois' statutory limit. Further, it would have been wholly reasonable for the jury to take Barbour's expertise as Remington's safety director into account, using the suggested 31,500 as a "general" guide. Such an assumption upon the jury's part would have placed the weight of the truck 3,020 pounds over the statutory limit.

We conclude that McClanahan has presented sufficient evidence from which a jury could reasonably infer that his truck was, indeed, in excess of the Illinois statutory weight limit. While McClanahan's case might have been stronger had he introduced the actual weight of the truck he drove, the fact that he did not is not fatal to his case.

■ Next, we address the parties' debate with regard to whether McClanahan would have personal liability had he violated the law.[9] Remington contends that even if McClanahan had been charged with driving his vehicle overweight, he presented insufficient evidence that he would have been "personally liable" for a violation of law because he would have faced no penalty. Remington argues that the Illinois statute creates a "de minimus" exception because it imposes no monetary fine upon a truck less than 2,000 pounds overweight.[10] Accordingly, although he technically would have violated the Illinois law, McClanahan, it is claimed, could not have been personally liable, as is required by his cause of action.

At the outset, we note that sufficient evidence was presented for the jury to reasonably conclude that the truck would have been more than 2000 pounds over the Illinois limit. As we have previously found, McClanahan introduced evidence that Remington's trucks, one of which he was driving at the time, weighed approximately 31,000 pounds. This

evidence, if believed by the jury, would have placed the weight of the truck with cargo at 75,800 pounds—3,520 pounds over the Illinois limit. McClanahan would then have been responsible for a fine levied by Illinois enforcement officials. In that case, McClanahan's violation would have been more than "de minimus," and Remington's argument would be of no consequence.

However, even assuming, *arguendo*, that McClanahan's truck was overweight by less than 2,000 pounds, we cannot determine but that his termination would still have been in retaliation for his refusal to violate a law for which he would have been personally liable. Regardless of whether the weight threshold for fine contained within the statute had been reached, the fact remains that by driving his overweight truck through Illinois, McClanahan himself would have violated the law. For Remington to argue, and for this court to hold, that retaliatory discharge for refusal to violate the letter of the law is acceptable because the penalty is "de minimus," is to belittle statutory authority. Such a holding would have the unintended consequences of condoning numerous violations of law which could conceivably be justified as "de minimus." We refuse to open Indiana's door to such tortured reasoning.

■ Further, the fact that McClanahan might not have been responsible for a monetary fine is not determinative in this case because McClanahan was as yet subject to the obligations contained in the statute upon drivers of overweight vehicles. Had he entered Illinois with an overweight load, McClanahan would have been responsible under the law for lightening his load.[11] If he could not lighten the load, the statute indi-

---

**9.** In *McClanahan II, supra,* our Supreme Court framed the issue as whether a cause of action exists for an "employee fired for refusing to commit an illegal act *for which he would be personally liable....*" 517 N.E.2d at 390 (emphasis supplied).

**10.** The Illinois law upon which Remington premises this argument read, at the time in question:

"Whenever the gross weight of a vehicle exceeds the weight limits [established in this chapter] by 2000 pounds or less, the owner or

operator of the vehicle must remove the excess. In [that] case, no arrest ticket shall be issued to the owner or operator of the vehicle by any officer, if the excess weight is either shifted or removed as required by this paragraph." Ill.Ann.Stat. ch. 95½, para. 15–112(d) (1981).

**11.** Although Remington contends that McClanahan could have lightened his load, nowhere did it contend that, in its conversations with him, he was in any way authorized or ordered to do so.

cates that an "arrest ticket"[12] would be issued. Thus, the fact that his load was less than 2,000 pounds overweight would not, as Remington contends, relieve McClanahan of personal responsibility for the "de minimus" violation.[13]

Additionally, we note that our Supreme Court in *McClanahan II* did not divine a lack of personal liability from the Illinois statute at issue. In reference to McClanahan's personal liability, the court stated, "If McClanahan had chosen to drive his overweight truck through Illinois, he would have been personally liable for violation of Illinois law and subject to a fine." 517 N.E.2d at 393. This language indicates that the violation of law is primary; the fact that the violator might be subject to a fine is secondary.

■ Last, Remington places much emphasis upon the fact that the Illinois weight limit established for trucks was lower than the federal weight limit, which was 80,000 pounds. It contends that, had McClanahan driven his truck through Illinois, its weight would have been well within the federal limit, though it might have exceeded the Illinois limit. Although Remington never directly challenged the Illinois law, it attempts to propose that the Illinois limit would have been invalidated as violative of the Commerce Clause of the federal Constitution, and that it should therefore not be liable for McClanahan's retaliatory discharge.

In *McClanahan I, supra,* we addressed the identical contention by Remington. This court's analysis of the issue reads:

"Remington and Barbour argue that Illinois' weight limit statute placed an unconstitutional burden on interstate commerce. Thus, although the Illinois weight limit statute was in full force and had not been declared unconstitutional by any court, Remington's unilateral determination that the statute was unconstitutional presumably permitted Remington to order McClanahan to violate the statute.

The argument is innovative, but without merit. We need not determine whether the Illinois weight limit statute was constitutional for we cannot accept an argument which would allow an employer to determine the constitutionality of a presumptively valid statute and then test its determination by using its employees as guinea pigs. If Remington believed the Illinois weight limit statute to be unconstitutional, its proper course was to challenge the statute in court rather than to instruct its drivers to violate the statute and risk personal liability." 498 N.E.2d at 1341–1342 (footnote omitted).

We adopt that reasoning again today.

*Damage Calculation*

Remington argues that the damages awarded McClanahan by the jury were improperly calculated. As an employee-at-will, the argument goes, he had no expectation of future employment with Remington. Because his future employment was based upon an uncertain period, Remington contends, McClanahan was entitled to no compensation for loss of employment in the future. Thus, he was entitled only to receive nominal damages for his retaliatory discharge. McClanahan counters with the proposition that the damages awarded by the jury were appropriate, as they were based upon an average of past weekly earnings while he was employed with Remington. As McClanahan never found comparable employment, the damages extended five years into the future, but were mitigated by earnings from subsequent employment. Thus, the issue is whether the verdict reflects the appropriate measure of damages to compensate an employee-at-will who was discharged in retaliation for refusing to violate the law.

In order to adequately address this question, it is important to note that Indiana recognizes the distinction between employees who are retained for a definite duration or subject to contract, and employees whose employment is of indefinite duration, and

12. The Illinois law in question does not elaborate upon the consequences of an "arrest ticket."

13. Remington also overlooks the fact that, had McClanahan's overweight truck done damage to

an Illinois highway, he would have been jointly and severally liable for that damage. *McClanahan II,* 517 N.E.2d at 393, citing Ill.Ann.Stat. Ch. 95½, para. 15–318 (Smith–Hurd Supp.1986).

may terminate at the will of the employer for any reason. This distinction between a contractual and an at-will employee gains significance in the context of an employee's termination. While an employee of definite duration may possess a cause of action for breach of contract if an employer fires him in violation of the employment agreement, no such clear solution exists for the wrongfully terminated employee-at-will.

Thus, Indiana courts have recognized a limited and strictly construed exception to the doctrine of "employment at will." In *Frampton v. Central Indiana Gas Co.* (1973) 260 Ind. 249, 297 N.E.2d 425, our Supreme Court stated that, while an employee-at-will may normally be fired for any reason, he or she does possess a cause of action for wrongful discharge when an employer retaliates for the exercise of a statutorily conferred right or for the employee's refusal to perform an unlawful act or to breach a statutorily imposed duty. The *Frampton* court has made clear the at-will employee's right to recover where such public policy has been violated:

> "We further hold that [a retaliatory] discharge would constitute an intentional, wrongful act on the part of the employer for which the injured employee is entitled to be fully compensated in damages." 297 N.E.2d at 428.

In elaborating upon *Frampton,* the court in *McClanahan II, supra,* stated:

> "Depriving McClanahan of any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer. Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity ...
>
> The law will not countenance such a situation." 517 N.E.2d at 393.

■ Inherent in the determination of what cause of action exists is a consideration of the nature of the employment. In Indiana, our Supreme Court has determined

that, unlike the wrongful discharge of a time- or contract-bound employee, the retaliatory discharge of an employee-at-will gives rise to a cause of action in tort, rather than a claim for breach of employment contract.[14] *Holtz v. Board of Commissioners of Elkhart County* (1990) Ind., 560 N.E.2d 645, 646; *see also Scott v. Union Tank Car Co.* (1980) 3d Dist. Ind.App., 402 N.E.2d 992, 993 ("[T]he act of an employer who discharges such an employee is one 'which is intended to cause an invasion of an interest legally protected from intentional invasion,' and is, therefore, a tortious act.").

In *Holtz*, the court was called upon to determine whether an action for retaliatory discharge of an employee-at-will was subject to the notice requirements of Indiana's Tort Claims Act where the employer was a state agency. The court observed:

> "[W]ere we to hold Holtz' cause of action sounding in contract, persons in like situations would be without remedy. It is agreed in this case that Holtz was an employee at will; he thus had no contractual right for the continuation of his employment. His only avenue of redress for retaliatory discharge of necessity must be in tort." 560 N.E.2d at 646.

In so determining, the court considered the conspicuous absence of a contractual arrangement, and explicitly disallowed contract actions upon the retaliatory discharge of an employee at will. This explains the court's allusion, made in *McClanahan II*, to a distinction between the cause of action available to a wrongfully discharged employee under contract—a breach of contract action—and a cause of action available to a wrongfully discharged employee-at-will—the tort of retaliatory discharge. 517 N.E.2d at 393.

However, that a cause of action may sound in tort or in contract depending upon the relationship of the employee to his or her employer does not answer the precise question at hand, i.e., the appropriate measure for damages due an employee-at-will who is wrongfully discharged. Although the retaliatory discharge exception is firmly entrenched

---

**14.** It should be noted, however, that at least one federal court in Indiana considers an action for retaliatory discharge a breach of contract claim.

*See Moffett v. Gene B. Glick Co.* (1984) N.D.Ind., 604 F.Supp. 229, 238.

in Indiana law, our research reveals that this case represents the first time that this court has been squarely presented with occasion to determine the correct measure of damages for the retaliatory discharge of an at-will employee.

We have found only one other case in which an Indiana court has determined the sufficiency of damages for the retaliatory discharge of an employee at will. In *Stivers v. Stevens* (1992) 4th Dist., 581 N.E.2d 1253, *trans. denied*, the court did not reverse a jury's award of $15,000 to a wrongfully discharged employee-at-will. There, the award was apportioned to cover the employee's lost wages for the period in which she was unemployed, for medical costs arising from a stress reaction to her firing, and for humiliation and emotional distress. There, the employee requested damages only for her period of unemployment. No judicially-constructed measure restricted her damages.

However, *Stivers* provides little guidance in that the appellee challenged only the sufficiency of the evidence supporting the award; she did not question the damage measure itself. Since, in *Holtz*, the Indiana Supreme Court unequivocally declared that retaliatory discharge is a tort cause of action, we may conclude that it must have intended the appropriate damage measures to sound in tort as well. *See also Campbell v. Eli Lilly & Co.* (1980) 1st Dist.Ind.App., 413 N.E.2d 1054, 1067, *trans. denied* (Ratliff, J., dissenting in part, concurring in result) (appropriate remedy for retaliatory discharge is a tort cause of action for damages).[15]

The traditional damage measures in tort causes of action are designed to compensate the injured person for the damage sustained by him due to the tort-feasor's actions, and to place the plaintiff in the same financial position in which he would have been had the tort not occurred. 22 Am. Jur.2d, *Damages* § 26 (1988). Such compensatory damages, while limited in this case to McClanahan's claimed future wages, may include pecuniary losses and future losses which will result from the defendant's wrong, as well as damages for bodily injury and mental anguish. 22 Am.Jur.2d, Damages § 28 (1988). Damages which are directly attributable to the wrong may be recovered. *Stivers, supra,* 581 N.E.2d at 1255. In the proper instance, punitive damages may also be recoverable. A measure for tort damages, however, must be flexible enough to fit all circumstances. *See Town of Rome City v. King* (1983) 3d Dist.Ind.App., 450 N.E.2d 72, 79 (upholding tort damages, including plaintiffs' emotional strain, in nuisance claim).

In assessing the damages due an at-will employee who is wrongfully discharged, however, those damages must reflect compensation for the tort—the retaliatory discharge itself. Once the jury determines that the employee has been discharged wrongfully, his status as employee at will is a nullity for the purpose of determining damages. In essence, courts and juries must draw a distinction between the relationship of the employee and the employer upon one hand, and the tort of wrongful discharge upon the other. In this way, the employee may be compensated for the pecuniary loss suffered due to the employer's wrongful act, while setting aside any issues upon the lack of a contractual arrangement between the parties.

In order to fully compensate the injured employee, it is necessary that damages be assessed based upon a presumption of prospective employment, once the employee has proven his discharge was retaliatory. We will not assume that, had the retaliatory discharge not occurred, that the employer

---

15. One further case, though it is of little use in this instance, should be recognized as well. In *Call v. Scott Brass, Inc.* (1990) 4th Dist. Ind.App., 553 N.E.2d 1225, 1229–30, *trans. denied,* the court addressed the remedy for the tort of retaliatory discharge when an employee is fired for jury service, and the action is brought pursuant to I.C. 34–4–29–1 (Burns Code Ed.Repl.1986), which prohibits such firing. In determining the appropriate remedies for such a firing, the court stated that an employee seeking reinstatement under that statute may not seek other forms of relief. Although the court did not have occasion to directly address the correct damage measure, it implied that damages other than reinstatement, such as lost wages, back pay or future wages, are available to wrongfully discharged employees seeking relief upon grounds other than the statute. *Id.*

would have fired the employee for some other reason even though it would be within the employer's prerogative to do so.

If the employee is able to find comparable employment, damages may be recovered for the period in which he is unemployed; however, if he is unable to find comparable employment,[16] as is the case here, the jury should consider the employee's evidence upon the difference between what he would have earned had he not been discharged, and what he actually did earn thereafter. We hasten to add that the fiction of prospective employment we use to gauge the wrongfully discharged employee's losses may not stretch on *ad infinitum*. Instead, we leave to the jury the task of determining what amount of time is a "reasonable time" after the employee's termination, noting only that such a reasonable time may not extend beyond the employee's death. Only in this way can the true injury to the employee be gauged, and the employee fully compensated for his loss.

Here, the jury determined that McClanahan was discharged because he refused to violate Illinois law. Although the jury considered his future wages as mitigation, it was reasonable for it to conclude that McClanahan's future employment was not comparable. It is uncontested that, while McClanahan did find other employment, his salary remained approximately $300 per week less than his salary at Remington. Thus, the verdict reflects the appropriate damage measure, as we have determined it to be: the difference between what McClanahan's earnings would have been had he continued in Remington's employ, and his actual earnings.

The law is well settled that, in a tort action, it is not necessary that the verdict reflect precise mathematical certainty. *See Liberty Mutual Insurance Co. v. Parkin-*

son (1985) 4th Dist.Ind.App., 487 N.E.2d 162, 166, *reh'g. denied* (mathematical certainty not required when assessing damages for tortious conduct). Such tort damages are within the province of the jury, and they will not be overturned absent an abuse of discretion. *Stivers, supra*, 581 N.E.2d at 1255. Here, the jury assessed the compensatory damages due McClanahan at $70,000, an amount $6,750 greater than his claimed prospective wages less actual earned wages, i.e., $63,250, had he continued in the employ of Remington for approximately three years, nine months, until the end of 1985.[17] The jury's determination that McClanahan's employment with Remington would have extended beyond termination for three years, nine months is well within the parameters of a "reasonable" time period.[18] As we have determined that McClanahan is entitled to damages which will compensate him for lost wages for a reasonable amount of time, we conclude that the verdict falls soundly within the realm of the jury's discretion. Further, McClanahan's damages are supported by evidence of his earnings, both before and after his termination, and are therefore not based upon mere speculation or conjecture. We affirm the award upon appeal. *See Willie's Construction Co., Inc. v. Baker* (1992) 5th Dist.Ind.App., 596 N.E.2d 958, *trans. denied*.

We emphasize that this damage measure in no way relieves a wrongfully discharged employee from the responsibility to mitigate his damages by seeking comparable employment. Neither does it relieve a jury from taking into account the employee's subsequent earnings in calculating the appropriate compensatory damages. Instead, this measure should serve only as a guide for the determination of damages which will fully compensate the wrongfully discharged employee-at-will for the tort perpetrated upon him. Further, we recognize that the tort of retaliatory discharge generally, and this

---

16. What is "comparable employment" is undoubtedly a factual question, dependent upon the particular facts involved, and is left to be resolved by future juries. While the salary involved in the future employment will not determine whether it is comparable, it may be a factor for the jury to consider, along with such other things as the nature of the employment.

17. This $63,250 claimed by McClanahan does not include any prejudgment interest, as Remington claims.

18. It is important that McClanahan's damage measurement ceased in 1985, prior to his death in 1988. McClanahan's death was unrelated to any issue in this lawsuit.

damage measure specifically, seems to place an employee-at-will in a better position than a contractually bound employee, who may only recover damages through the end of his contract. However, it is not our province to ignore the established common law of the State of Indiana. Instead, it is the province of the legislature to correct any inaccuracies it may perceive.[19]

The jury's assessment of damages is affirmed.

The trial court's order for a new trial upon the issue of damages is reversed and the cause is remanded with instructions to enter judgment in the amount of the jury verdict.

## OPINION UPON REHEARING

### (April 4, 1995)

This opinion upon rehearing is issued for the sole purpose of remedying two misleading and inadvertent statements made in our decision of December 29, 1994. In that opinion we stated:

"The jury's determination that McClanahan's employment with Remington would

---

**19.** By reason of our holding with respect to the measure of damages, it is unnecessary to address Remington's argument that the trial court erred

have extended beyond termination for three years, nine months is well within the parameters of a 'reasonable' time period.[18]

---

[18] It is important that McClanahan's damage measurement ceased in 1985, prior to his death in 1988. McClanahan's death was unrelated to any issue in this lawsuit."

644 N.E.2d at 942.

In point of fact the jury did not have before it any period for compensatory damages beyond the three year nine month time-frame for which it awarded damages. At that time in 1985 McClanahan became one hundred percent (100%) totally disabled as a result of post-traumatic stress disorder from military service in Vietnam.

In all other respects, the petition for rehearing is denied.

FRIEDLANDER and RUCKER, JJ., concur.

---

in refusing an instruction limiting any recovery to only nominal damages.