Kory S. **FODDRILL**,
Appellant/Defendant,

v.

Constance **CRANE**, Appellee/Plaintiff.

No. 47A01–0712–CV–583.

Court of Appeals of Indiana.

Oct. 16, 2008.

---

Kenneth G. Doane, Jr., George A. Budd, V, Waters, Tyler, Scott, Hofmann & Doane, LLC, New Albany, IN, Attorneys for Appellant.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Michael W. Phelps, Nunn Law Office, Bloomington, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Kory Foddrill appeals from a jury award of $194,100.00 in favor of Appellee/Plaintiff Constance Crane following trial on her negligence claim. Foddrill's arguments, partially restated, are that Crane produced insufficient evidence to sustain a negligence finding, the trial court abused its discretion in instructing the jury, and the jury award was excessive and not supported by the evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 16, 2003, Crane was stopped at a red light in Bedford when a truck driven by Foddrill struck her car from behind. As a result of the collision, Crane "reared up out of the seat with the safety belt on and hit the sun visor [with her head] and took the steering wheel at the bottom part of [her], below [her] belly button[.]" Tr. p. 106. Foddrill had a cellular telephone in his hand as he exited his truck but, when he was asked if it could be used to make a call, claimed that it did not work. Later, after police arrived, Crane saw Foddrill using the telephone.

The next morning, Crane felt "stiff all over" and noticed bruising across her hips and lower abdomen approximately two days later. Tr. p. 113. The first few days following the collision, Crane was "stiffer than a board[.]" could hardly walk, and felt pain in her neck and shoulders. Tr. p. 112. Eventually, Crane sought out the services of a chiropractor but found the treatments ineffective.

On November 12, 2003, Crane went to see Dr. Colin Chang, M.D. Crane told Dr. Chang that she had been suffering from neck pain since her accident. Dr. Chang diagnosed Crane with myofascial pain syndrome of the neck and cervical torticollis, or spasms of the neck muscles. According to Dr. Chang, myofascial pain syndrome was "almost like a whiplash-type injury where you have muscles getting pulled, usually from some type of trauma[,]" and that cervical torticollis could develop from severe myofascial pain syndrome. Plaintiff's Ex. 1 p. 5. Dr. Chang gave Crane muscle relaxants, anti-inflammatories, and pain medication. In addition, Dr. Chang performed a "spray-and-stretch," which involves application of a "cold freeze spray" followed by a deep tissue massage. Plaintiff's Ex. 1 p. 6.

Dr. Chang saw Crane again on November 19, 2003. Crane still complained of headaches and insomnia and told Dr. Chang that she was afraid to drive for fear of another vehicle hitting her. Dr. Chang performed another spray-and-stretch and administered a trigger-point injection of anesthetic and anti-inflammatory into

Crane's shoulders. Dr. Chang last saw Crane on February 17, 2004, regarding her neck. At trial on October 10, 2007, almost four years after the collision, Crane testified that she was not as coordinated as she had been before the collision, had trouble sleeping, could no longer perform many household chores, and could no longer crochet or play bingo because she could not hold her head down.

During trial, Foddrill proposed the following final jury instruction, which the trial court declined to give: "An inference of negligence does not rise simply from the happening of a rear end collision." Appellant's App. p. 271. Additionally, the trial court overruled Foddrill's objections to final instructions 10 and 12, which he contended were not supported by any evidence in the record.

During deliberations, the jury sent out a handwritten note that read as follows: "Confused? The Amount awarded is it times 100% or just 100% of what we award?" Appellant's App. p. 240. After it had reached a verdict, the jury sent out a verdict form that apportioned 100% of the fault for the collision to Foddrill and indicated a finding that Crane's total damages were $1941.00. The verdict form then incorrectly indicated that the amount of damages multiplied by 100% equaled a total verdict of $194,100.00. The trial court noted the incorrect calculation and, without objection from Foddrill, sent a calculator, the original verdict form, and a blank form back to the jury. The jury sent back a new verdict form indicating that Foddrill was 100% at fault and that Crane's damages were $194,100.00, resulting in a total verdict of $194,100.00. Foddrill polled the jury, and each of its members indicated that the latter form represented his or her verdict.

## DISCUSSION AND DECISION

### I. Whether the Jury Finding of Negligence was Supported by Sufficient Evidence

Foddrill contends that the jury's verdict that he was negligent was not supported by sufficient evidence. "When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses." *Hardsaw v. Courtney*, 665 N.E.2d 603, 606 (Ind.Ct. App.1996). "We consider only the evidence and reasonable inferences therefrom which support the jury's verdict." *Id.* "In a civil case in which the jury returns its verdict for the plaintiff and the trial court enters judgment on that verdict, reversal is proper only where there is no evidence or reasonable inference from that evidence on an essential element of the plaintiff's case." *Id.*

■ "The tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind.Ct.App.2005), *trans. denied.* Specifically, Foddrill contends that Crane failed to produce sufficient evidence to establish that he breached a duty of care to Crane or that such a breach proximately caused her injuries.

#### A. Breach of Duty of Care

■ Foddrill claims that Crane failed to carry her burden on this point, noting that there was no direct evidence that he was driving in a careless manner before the accident. There is no requirement, however, that negligence be proven by direct evidence. "It is a well-settled principle that [negligence] can be proven by circumstantial evidence alone." *Thomas v. State*, 698 N.E.2d 320, 324 (Ind.Ct.App.

1998), *trans denied.* So, while we recognize that the mere occurrence of even a rear-end collision, standing alone, does not raise any presumption or authorize an inference of negligence, *see, e.g., Haidri v. Egolf,* 430 N.E.2d 429, 432 (Ind.Ct.App. 1982), additional direct or circumstantial evidence regarding the circumstances and results of the collision *can* give rise to such an inference.

Here, the record indicates that Crane was stopped at a traffic signal when Foddrill's vehicle crashed into hers from the rear, pushing it into the vehicle ahead. Notably, there is no evidence of inclement weather, defects in the road surface, mechanical failure, an unexpected and sudden medical emergency, or any other circumstance that might tend to excuse the collision. Additionally, when Foddrill emerged from his vehicle, he was holding a cellular telephone that he claimed was inoperative but was later seen speaking on the same telephone. As the record contains no explanation for why Foddrill might have been carrying what he falsely claimed to be an inoperative telephone in his hand, a reasonable inference is that he was using it at the time of the accident, or just before, was distracted as a result, and sought to conceal that fact.[1] Although the mere fact of a rear-end collision does not allow an inference of negligence, we conclude that this one, a collision into a stationary vehicle with no suggestion of any other contributing cause, did.

Our conclusion is consistent with Indiana authority on this question. For example, in *Taylor v. Fitzpatrick,* 235 Ind. 238, 132 N.E.2d 919 (1956), the defendant's vehicle crashed into the rear of the plaintiff's parked car without leaving skid marks when the weather was clear, the pavement dry, and the visibility good. *Id.*

at 241–42, 132 N.E.2d at 921. The Indiana Supreme Court concluded that this evidence was sufficient to take the question of a breach of the duty of care to the jury. *Id.* at 245, 132 N.E.2d at 923.

Additionally, in *Zink v. Radewald,* 369 F.2d 253 (7th Cir.1966), the Court, applying Indiana law, concluded that the record justified leaving the question to the jury. *Id.* at 255. In that case, the plaintiff was stopped in traffic on a clear day when struck from behind by the defendant's truck. *Id.* at 254–55. The *Zink* Court explained its decision as follows:

> In our opinion the direct evidence concerning the circumstances surrounding the collision here involved and the results it produced is such that the jury might reasonably have inferred that the collision occurred because of failure of the defendant to operate his truck with that degree of control and caution the exercise of ordinary care required under those circumstances. The defendant had been following the plaintiff 'in the line of traffic' for at least three blocks. His vision was unobstructed. He could not have been unaware of the presence of the plaintiff's vehicle or of the heavy traffic conditions existing. There is basis for an inference that the collision resulted from a failure of the defendant to keep a lookout ahead, or to so restrict his speed and keep at such distance behind the plaintiff's vehicle as reason and prudence dictated under the existing traffic conditions. That it may also be reasonable to conclude otherwise does not warrant a withdrawal of the issue of defendant's negligence from the jury.

*Id.* at 255–56.

Foddrill relies on *Haidri,* 430 N.E.2d at 429, an automobile accident negligence

---

**1.** Foddrill presented no evidence that might have explained the inconsistencies between his statements and his actions regarding the cellular telephone. Indeed, Foddrill did not attend trial.

case in which this court upheld a trial court's grant of the defendants' motion for judgment on the evidence. *Haidri*, however, is distinguishable on the facts. In that case, Haidri made a right turn into the far westbound lane of a divided four-lane highway, crossing over the right-hand lane in the process. *Id.* at 431. After traveling approximately 150 feet and accelerating to approximately thirty-five to forty-five miles per hour, the Haidri vehicle was struck from behind by the tractor-trailer driven by Egolf. *Id.*

Quite simply, the evidence adduced in *Haidri* did not describe an accident that would not normally occur in the absence of a breach of duty of care. The inference that Haidri pulled out in front of Egolf such that Egolf was unable to stop in time, a situation that would not involve any negligence on Egolf's part, was, perhaps, the most reasonable inference that could be drawn from the record. While the evidence adduced in *Haidri* did not completely rule out the notion that Egolf was negligent, any such conclusion, without more, would have been based on conjecture. In contrast, Foddrill's vehicle struck Crane's stationary vehicle, and there is no evidence of anything that might explain the accident outside a breach of Foddrill's duty of care. We conclude, as a matter of law, that the jury was free to infer a breach of the duty of care on Foddrill's part.

## II. Proximate Cause

■■■■ Foddrill also contends that Crane produced insufficient evidence from which the jury could infer that the accident caused her injuries.

An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact-that is, that the harm would not have occurred "but for" the defendants' conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

Hence, in order for the plaintiff to carry her burden of proof, she must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of her injury. The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation.

When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony. Ordinarily, however, the question of the causal connection between a permanent condition, an injury and a pre-existing affliction or condition is a complicated medical question. When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary. An expert, who has the ability to apply principles of science to the facts, has the power to draw inferences from the facts which a lay witness or jury would be incompetent to draw.

*Daub v. Daub*, 629 N.E.2d 873, 877–78 (Ind.Ct.App.1994) (citations omitted), *trans. denied.*

Foddrill notes that Dr. Chang was unable, in his deposition testimony, to definitely state that Crane's injuries were

caused by the accident on October 16, 2003. Foddrill's argument, however, assumes that Crane's injuries were not objective and of sufficient complexity so as to be beyond the understanding of a layperson. First, the nature of Crane's injuries was objective, inasmuch as Dr. Chang was able to detect their physical manifestations. *See Topp v. Leffers,* 838 N.E.2d 1027, 1033 (Ind.Ct.App.2005) ("[A] complaint or an injury is objective when it can be discovered through a 'reproducible physical exam or diagnostic studies that are independent of the patient telling you what they feel or where they feel it.' A subjective complaint or injury is perceived or experienced by a patient and reported to the patient's doctor but is not directly observable by the doctor.") (record citation omitted), *trans. denied.* Dr. Chang testified that he detected physical symptoms of Crane's injuries, *i.e.,* he could "feel muscles tensed up and balled up and [he] felt a lot of that on both of her posterior shoulders and cervical neck area." Plaintiff's Ex. 1 at 5–6.

Moreover, we believe that the causal connection here is not so complex that a layperson would be unable to comprehend it without expert testimony. There is no evidence that Crane suffered from any preexisting neck injuries, the collision was sufficiently forceful so as to cause Crane's head to hit the roof of her vehicle, and she almost immediately afterwards began feeling stiffness and pain in her neck. We do not believe that any expert testimony was required to show a causal relationship between the accident and Crane's injuries under the circumstances of this case.[2] Crane produced sufficient evidence from which the jury could have found Foddrill negligent. As such, the trial court properly denied Foddrill's motion for judgment

on the evidence and motion to correct error.

## II. Whether the Trial Court Abused its Discretion in Instructing the Jury

▮▮▮▮▮▮ Foddrill contends that the trial court abused its discretion both in failing to instruct the jury that negligence cannot be inferred merely from the occurrence of a rear-end collision and in giving two instructions he claims were unsupported by the evidence.

When we review a trial court's decision to give or refuse a tendered instruction, we consider whether: 1) the instruction correctly states the law; 2) the evidence in the record supports giving the instruction, and 3) the substance of the instruction is covered by other instructions. In determining whether sufficient evidence exists to support an instruction, we will look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *Simmons v. Erie Ins. Exch.,* 891 N.E.2d 1059, 1064 (Ind.Ct.App.2008) (citations, quotation marks, and footnote omitted). "Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Penn Harris Madison Sch. Corp. v. Howard,* 861 N.E.2d 1190, 1195 (Ind.2007) (citation omitted).

### A. Rear–End Collision Instruction

As previously mentioned, the trial court refused to give the following instruction

---

**2.** We note that Foddrill presented no expert testimony, or any other evidence, suggesting

that Crane's injuries were not caused by the collision.

tendered by Foddrill: "An inference of negligence does not rise simply from the happening of a rear end collision." Appellant's App. p. 271. In our view, this instruction, while a correct statement of the law as far as it goes, is not a *complete* statement of the relevant law and could have been misleading. Quite simply, this instruction implies that the jury could not infer that Foddrill was negligent under the circumstances of the case when it clearly could have. The trial court did not abuse its discretion in this regard.

### B. Final Instructions 10 and 12

 Foddrill contends that the trial court abused its discretion in giving final instructions 10 and 12, which he claims were unsupported by any evidence in the record. Final instruction 10 provided as follows: "Absent notice to the contrary, a person using the road is entitled to assume that others will exercise reasonable or ordinary care." Appellant's App. p. 261. Final instruction 12 provided as follows:

> It is the duty of a driver, while operating a motor vehicle on a public highway, to keep a reasonable lookout for other vehicles upon the roadway and to maintain control over such vehicle so that such driver could readily operate or stop to avoid a collision and possible injury. It is a driver's responsibility to see what they could have seen had he/she exercised due care under the circumstances. If you find that such party failed to keep proper lookout or control over their vehicle, such failure would constitute negligence on their part.

Appellant's App. p. 263.

Specifically, Foddrill contends that the above instructions were unsupported by any direct evidence that he was operating his vehicle in a negligent manner. The instructions at issue, however, were covered by the evidence presented at trial and were proper statements of the law. More-over, the instructions were relevant to the issues raised in a comparative fault case. The trial court did not abuse its discretion in instructing the jury.

### III. Whether the Jury's Award was Supported by the Evidence

 Foddrill contends that the jury's award of $194,100.00 to Crane was unsupported by the evidence and that, in any event, it must be reversed as it is also the result of an alleged mathematical error.

Broadly stated, the person injured by the negligence of another is entitled to reasonable compensation. "Reasonable compensation" refers to an amount that would reasonably compensate the plaintiff for bodily injury and for pain and suffering. It also takes into account past, present, and future expenses reasonably necessary to the plaintiff's treatment and all financial losses suffered, or to be suffered, as a result of the inability to engage in his or her usual occupation.

When reviewing a jury verdict containing a damage award claimed to be excessive or inadequate, we consider only the evidence that supports the award together with the reasonable inferences therefrom. If there is any evidence to support the amount of the award, even if it is conflicting, this court will not reverse. A jury determination of damages is entitled to great deference when challenged on appeal.

This discretion is not limitless, however. We will set aside an award of compensatory damages as impermissibly excessive where it is apparent from a review of the evidence that the amount of damages is so great it cannot be explained upon any basis other than passion, partiality, prejudice, corruption, or some other improper element. To warrant reversal, the award must appear to be so outrageous as to impress

the Court at first blush with its enormity. Still, the jury's damage award will not be deemed the result of improper considerations if the size of the award can be explained on any reasonable ground. Further, when the evidence concerning the injury and damages is conflicting, the jury is in the best position to assess the damages and the jury's verdict cannot be said to be based upon prejudice, passion, partiality, corruption, or on the consideration of some improper element. . . .

A personal injury award is not excessive where (1) the award was not based upon jury prejudice, partiality, or corruption, (2) the jury has not misunderstood or misapplied the evidence, (3) the award was not based upon consideration of an improper element such as liability insurance, and (4) the award was within the parameters of the evidence. Under such circumstances, we will not substitute our judgment for that of the jury as to reasonable compensation for a plaintiff.

*Clancy v. Goad*, 858 N.E.2d 653, 657–58 (Ind.Ct.App.2006) (citations, quotation marks, and brackets omitted), *trans. denied.*

We conclude that the jury's award here does not appear to be so outrageous that it impresses us at first blush with its enormity. As such, we will not disturb it. The day after the collision, or October 17, 2003, Crane was stiff, could hardly walk, and felt pain in her neck and shoulders. Over the next few months, Crane suffered neck pain and spasms, headaches, and insomnia. Crane first sought help from a chiropractor and then Dr. Chang, who diagnosed her with myofascial pain syndrome and cervical torticollis and treated her with muscle relaxants, anti-inflammatories, and pain medication. Chang also performed two "spray-and-stretch" procedures on Crane and administered a trigger-point injection of anesthetic and anti-inflammatory into her shoulders.

Moreover, the evidence indicates that Crane's injuries are chronic and, to a certain extent, permanent. Crane has been told by a therapist that she would always have trouble "looking back or holding [her] head down." Tr. p. 118. At trial on October 10, 2007, Crane testified that she had never been the same since the accident, had difficulty taking care of her grandchildren, and could no longer perform several chores around her home. Finally, Crane also testified that she could no longer participate in hobbies, including playing bingo and crochet, adding that "there isn't anybody loves to crochet better than I do." Tr. p. 120. In light of Crane's years of pain and suffering and the apparent permanent nature of her injuries, we cannot say that the jury's award was impermissibly excessive.

■■■■ Foddrill also contends that the jury's award was based on a miscalculation and must therefore be reversed. To support this argument, Foddrill points to the jury's first verdict form, in which it appears that the jury may have multiplied Crane's actual damages by 100 to reach its final award instead of first determining the total damages and then multiplying by the percentage of Foddrill's fault. As an initial matter, we note that Foddrill failed to object when the trial court allowed the jury to revise its first calculation form and has waived the issue for appellate consideration. "[A] party's failure to present a contemporaneous objection at trial precludes appellate review of the claim." *Turner v. State*, 878 N.E.2d 286, 293–94 (Ind.Ct.App.2007) (citing *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002)), *trans. denied.*

■■■ Waiver notwithstanding, even if we were convinced that the award was the

result of a miscalculation, a jury's general verdict in a negligence case may not be impeached by a damages calculation form, at least so long as it is clear that the general verdict is indicative of each juror's intent. In *Tincher v. Davidson,* 762 N.E.2d 1221, 1226 (Ind.2002), the Indiana Supreme Court reversed the trial court's declaration of a mistrial after the jury returned two successive calculation forms that contained mathematical errors but reflected the same final award of $150,000.00. In so doing, the court noted that "[t]he general verdict expressed the jurors' unanimous intent to award a judgment of $150,000.00 to the plaintiff [and] was not internally inconsistent, illogical, or impossible" and concluded that "the general verdict should not have been impeached by the calculation form." *Id.* at 1226. Here, although the first calculation form contained a mathematical error, both reflected the same total award. Moreover, the jury was polled and all members affirmed that an award of $194,100.00 was his or her verdict. Pursuant to *Tincher,* we will not reverse the total award to Crane on the basis that the first calculation form contained a mathematical error.

The judgment of the trial court is affirmed.

RILEY, J., and BAILEY, J., concur.