Yvonne TOPP, Appellant,

v.

Sarah LEFFERS, Appellee.

No. 02A03–0502–CV–51.

Court of Appeals of Indiana.

Oct. 21, 2005.

Publication Ordered Dec. 8, 2005.

Transfer Denied Feb. 21, 2006.

Konrad M.L. Urberg, Christoff & Christoff Attorneys, Fort Wayne, for Appellant.

Michael H. Michmerhuizen, Kevin K. Fitzharris, Fort Wayne, for Appellee.

## OPINION

ROBB, Judge.

Yvonne Topp appeals the trial court's grant of Sarah Leffers' motion for a directed verdict in Topp's personal injury action against Leffers. We affirm.

### Issue

 Topp raises three issues for our review,[1] which we consolidate and restate as whether the trial court properly granted Leffers' motion for a directed verdict.

### Facts and Procedural History

On November 24, 2000, Topp was sitting in the front passenger seat of a vehicle driven by David Marks that was stopped at a stoplight. Leffers failed to stop at the stoplight, and her car rear-ended Topp's vehicle. When Leffers' vehicle hit Topp's car, Topp hit her head, which caused her to immediately feel intense pain. Emergency medical technicians arrived on the scene and wanted to take Topp to the hospital, but she refused. Topp then went home and took some Tylenol because her head was hurting.

The next day, Topp testified that she had pain in her neck, mid-back, and lower back. On November 28, 2000, Topp called Dr. George Joachim, a chiropractor, and scheduled an appointment for the following day. Topp had previously treated with Dr. Joachim in April, May, and June of 2000 for pain in her neck, mid-back, and lower back. During her initial visits with Dr. Joachim, Topp informed Dr. Joachim that she had been involved in several automobile accidents. She could not remember the exact number of accidents, but stated that it was less than five. Between November 2000 and May 2001, Topp treated solely with Dr. Joachim.

On May 10, 2001, Topp met with Dr. Eric Schreier, who had been referred to her by Dr. Joachim. After examining Topp, Dr. Schreier wrote, "This examination and history in this 54–year–old woman reveals evidence for subacute chronic mechanical spinal dysfunction, apparently due to the motor vehicle accident." Appellant's Appendix at 153. Topp treated with Dr. Schreier approximately ten times. At one point, Dr. Schreier wrote that Topp "appears to have occipital neuralgia from a motor vehicle accident." *Id.* at 155. In a letter dated March 13, 2003, Dr. Schreier noted that he "first saw [Topp] in physical medicine clinic on 5/10/01 due to complaints suffered in a motor vehicle accident injury 11/24/00." *Id.* at 156.

On July 24, 2002, Topp filed her complaint in which she alleged that Leffers

---

1. In her statement of the issues, Topp asserts that one of the issues before us is whether the trial court erred in denying her motion to correct errors. However, Topp fails to present any separate argument on this issue or cite any legal authority to support her position. "Failure to present a cogent argument constitutes a waiver of that issue for appellate review." *Hollowell v. State,* 707 N.E.2d 1014, 1025 (Ind.Ct.App.1999); *see also* Ind. Appellate Rule 46(A)(8)(a).

had committed negligence when she rear-ended Topp's vehicle. Topp sought damages only for the aggravation of her pre-existing injuries from prior accidents.

On November 20, 2003, Dr. Mark Reecer conducted an independent medical examination of Topp. After examining Topp and reviewing her medical records, Dr. Reecer issued a report in which he stated:

Ms. Topp clearly had preexisting history of back complaints. According to Ms. Topp, she states that she treated with a chiropractor before the accident but her symptoms were better prior to the accident of November 24, 2000. In reviewing the records, this does not appear to be the case. In fact, the chiropractor was recommending that the patient come more often so that they could get her symptoms under control.

There is also a reported history of multiple motor vehicle accidents. Ms. Topp indicates that she has been in several but it is less than five. She denies any tests or treatment for these accidents. This was noted in the chiropractic records as well. I do not have any other records which indicate any treatment was provided after these accidents.

*Ms. Topp had prior spine complaints which could possibly have been aggravated by the accident.* There certainly was an increase in the frequency of chiropractic treatments after the accident occurred.

\* \* \*

*All things considered, Ms. Topp may have had an aggravation of her preexisting spine complaints.*

*Id.* at 149–50 (emphasis added).

Dr. Reecer was deposed on August 18, 2004. During the deposition, Dr. Reecer was asked about the five percent permanent partial impairment rating Dr. Schreier had given Topp. Dr. Reecer was specifi-cally asked, "Doctor, in your opinion, is this 5% whole person impairment rating attributable to the November 24, 2000, car accident?" *Id.* at 210. Dr. Reecer responded, "Well, there's, there's no, we can't, medically, determine that, so I, I can't say that it is. I can say that there is an impairment present, but I cannot relate it specifically to the accident." *Id.* After this, Dr. Reecer was asked whether in his written report he had concluded that Topp may have had an aggravation of her pre-existing spine complaints, and he confirmed he had drawn that conclusion in his report.

Topp's jury trial began on August 24, 2004. During the trial, Topp testified that prior to the accident her problems in her neck and mid and lower back were diminished, but after the accident these problems were exacerbated. Neither Dr. Reecer nor Dr. Schreier testified at the trial, but Dr. Reecer's deposition and written report were entered into evidence as were Dr. Schreier's medical records regarding Topp. After Topp rested, Leffers moved for a directed verdict arguing that Topp had not presented sufficient evidence to prove the causation element of her negligence claim because she had not introduced expert medical testimony to demonstrate that her injuries were caused by the November 2000 accident. In considering Leffers' motion, the trial court stated:

Here's the difficulty I have, Mr. Urberg [Topp's counsel], and it's this. You've got a Plaintiff here who's had similar problems in the past. Ok. And, you've got all these medical reports in which, basically, the Dr. [sic] is recounting what the Plaintiff is telling the doctor. She presents with pain, that kind of thing. And, then you've got [Dr.] Reecer where he's never asked if there's; the essential question, whether or not to a reasonable degree of medical certainty the accident caused the injuries complained of. Now,

what I've got here doesn't make it. I mean, you've got to have someone that says independent of the—if it's not an objective—like break or something like that, you've got to have someone, some expert, that says—that locks (sic) up the causation to the injury. Without that you don't meet the *Daub* [*v. Daub,* 629 N.E.2d 873, 877 (Ind.Ct.App.1994)] test. . . . I've got to have something here that addresses medical causation, causation with the accident and the injury. That's one of the four (4) tort requirements, one of the elements. I don't think the medical record alone can get that done unless the doctor has a letter that's been admitted into evidence that says that the patient presents with pain and I believe her injuries were causally connected to a reasonable degree of medical certainty to the accident in question. If I don't have that, I don't have causation connected.

Transcript at 76–77. That trial court then granted Leffers' motion for a directed verdict.

On September 20, 2004, Topp filed a motion to correct errors in which she argued that her testimony, in conjunction with Dr. Schreier's medical records and Dr. Reecer's deposition, was sufficient evidence of causation to allow her case to go to the jury. In considering Topp's motion, the trial court drew the following conclusions:

1. Because [Topp] was involved in a number of automobile accidents prior to the accident in question in this case, and because many of the symptoms and pains [Topp] complained of at trial pre-existed the accident in question in this case, the causal connection between the accident and the resulting injury, if any, complained of by [Topp] is a complicated medical issue. An understanding and analysis of this causal connection is not within the understanding of a lay jury and requires the testimony of an expert witness.

2. No physician in this case testified to a reasonable medical certainty or probability regarding the causal connection between the accident in question in this cause and [Topp's] post-accident complaints of injury or pain.

* * *

5. [Topp's] testimony, when added to the physicians' testimony in this case does not rise to the level of reasonable medical certainty or probability.

6. [Topp] has failed to provide evidence to support the third essential element of a case of negligence, that of proximate causation.

Brief of the Appellant Yvonne Topp at 8. The trial court ultimately denied Topp's motion to correct errors and this appeal ensued.

*Discussion and Decision*

Topp argues that the trial court erred in granting Leffers' motion for a directed verdict. We disagree.

I. Standard of Review

When considering a challenge to a trial court's ruling on a motion for a directed verdict, also known as a motion for judgment on the evidence, we use the same standard as the trial court, and will only consider the evidence and reasonable inferences most favorable to the non-moving party. *Schloot v. Guinevere Real Estate Corp.,* 697 N.E.2d 1273, 1275 (Ind.Ct.App. 1998). "In a jury trial, a court should withdraw the issues from the jury and enter judgment on the evidence in favor of the defendants when, at the close of the plaintiff's evidence, there is a total absence of evidence or reasonable inferences on at least one essential element of the plaintiffs' case." *Daub v. Daub,* 629 N.E.2d 873, 877

(Ind.Ct.App.1994), *trans. denied.* A motion for a directed verdict should only be granted where there is no substantial evidence supporting an essential element of the claim. *Id.*

## II. Causation

 In her complaint, Topp alleged that the pain in her neck, mid-back, and lower back was caused by Leffers' negligence. "The tort of negligence consists of three elements: (1) a duty to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." *Kincade v. MAC Corp.,* 773 N.E.2d 909, 911 (Ind.Ct.App.2002).

 Here, the trial court found that Leffers' motion for a directed verdict should be granted because Topp did not present sufficient evidence to prove the causation element of her negligence claim. "An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered." *Daub,* 629 N.E.2d at 877. "The element of causation requires that the harm would not have occurred but for the defendant's conduct." *City of East Chicago v. Litera,* 692 N.E.2d 898, 901 (Ind.Ct.App.1998), *trans. denied.* "The 'but for' analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm." *Daub,* 629 N.E.2d at 877.

The trial court concluded that Topp did not carry her burden with regard to the element of causation because no expert witness testified to a reasonable medical certainty that the November 2000 accident caused Topp's post-accident injuries. In drawing this conclusion, the trial court relied upon *Daub.* In that case, Daub slipped on snow and ice that had accumulated on her in-laws' patio. At the time, Daub did not feel any pain, but the next day she began to feel pain in her lower back. Daub sought treatment with a chiropractor but it brought her no relief. The pain in her back later caused Daub to be hospitalized for ten days and forced her to have two surgeries on her back. Daub eventually filed suit against her in-laws in which she alleged that their negligence caused her injuries. At trial, the trial court excluded both parties' witnesses and exhibits because neither party had filed a witness or exhibit list. Thus, Daub was the only person to testify regarding her injuries. Daub testified that she had minor back problems before the accident. After Daub rested, her in-laws made a motion for judgment on the evidence. The trial court granted this motion because Daub could not prove that the slip was the cause of her injuries without expert medical testimony.

On appeal, Daub argued that her testimony alone was sufficient to permit the case to be placed before the jury. We began by noting that "[w]hen an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." *Id.* However, we stated that the question of the causal connection between a permanent condition, an injury, and a pre-existing affliction or condition is a complicated medical question. *Id.* at 877–78. We said, "When the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." *Id.* at 878. Turning to the facts of the case, we stated that Daub's testimony

> is so lacking in probative value on the question of cause in fact that it offers the jury at best only the mere possibility that her back ailment was in fact caused by the slip Mrs. Daub experienced at her in-laws. The distinctions between

Mrs. Daubs' various back problems are not objectively discernible, even to Mrs. Daub. The temporal congruity which Mrs. Daub recognized between the slip and her lower back pain is admittedly some evidence of causation, which when coupled with a diagnosis of the nature of her ailment, and an application of scientific principles by one knowledgeable in the treatment of the ailment, may be sufficient to permit a jury to find for the Daubs without resort to speculation. But, in the absence of that additional evidence, Mrs. Daubs' lay report of the facts which she experienced first-hand amounts to nothing more than her own hypothesis that her back ailment was caused by the slip. Alone, Mrs. Daub has established nothing more than the facts which make up her allegation.

*Id.* We held that the trial court properly granted the in-laws' motion for judgment on the evidence because "[n]o reasonable inference that her in-laws' failure to keep their patio cleared of snow and ice was the proximate cause of Mrs. Daub's lower back problems can be drawn from the testimony of record." *Id.*

■ Pursuant to *Daub*, in order for Topp to carry her burden on the element of causation, it was necessary for her to introduce the testimony of an expert medical witness on this issue. First, like Daub, Topp's complaints were subjective in nature rather than objective. Dr. Reecer explained that a complaint or an injury is objective when it can be discovered through a "reproducible physical exam or diagnostic studies that are independent of the patient telling you what they feel or where they feel it." Appellant's App. at 176. A subjective complaint or injury is perceived or experienced by a patient and reported to the patient's doctor but is not directly observable by the doctor. *Id.* Here, Topp complained that her pre-exist-ing injuries were aggravated by the November 2000 accident. Thus, Topp's injuries were subjective in nature because Topp experienced them but they were not directly observable by any of her doctors. Because Topp's injuries were subjective in nature, her testimony alone was not sufficient to prove causation without expert medical testimony. *Daub*, 629 N.E.2d at 877.

Furthermore, because of Topp's pre-existing injuries, discerning the causal connection between the November 2000 accident and Topp's resulting injuries is a complicated medical question that is not within the understanding of a lay person. *Id.* at 877–78. Therefore, it was necessary for Topp to introduce the testimony of an expert medical witness on the issue of causation. *Id.* Here, Topp did introduce testimony from expert witnesses, namely the opinions of Drs. Reecer and Schreier. The question before us then is whether Dr. Reecer and Dr. Schreier's opinions are sufficient evidence of causation to permit Topp to survive Leffers' motion for a directed verdict and get her case to the jury.

■ A plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. *Id.* at 877. Evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. *Id.* An expert medical opinion that lacks reasonable certainty, standing alone, is not sufficient to support a judgment. *Litera*, 692 N.E.2d at 901. "[E]xpert medical opinion couched in terms less than that of a reasonable degree of medical certainty; such as 'possible,' 'probable,' or 'reasonably certain,' are admissible and do have probative value. However, such medical testimony standing alone, unsupported by other evidence, is not sufficient to support a verdict

...." *Colaw v. Nicholson*, 450 N.E.2d 1023, 1030 (Ind.Ct.App.1983).

The expert opinions of Dr. Reecer and Dr. Schreier, standing alone, are not sufficient to sustain Topp's burden on the element of causation because they lack reasonable medical certainty. In his written report, Dr. Reecer stated, "Ms. Topp had prior spine complaints which *could possibly* have been aggravated by the accident." Appellant's App. at 150 (emphasis added). He went on to say, "All things considered, Ms. Topp *may* have had an aggravation of her preexisting spine complaints." *Id.* (emphasis added). During his deposition, Dr. Reecer again confirmed that he believed Topp may have had an aggravation of her pre-existing spine complaints. *Id.* at 211. In *Litera*, an expert medical witness testified that a patient's fall may have worsened his condition, and that it was possible that the patient would have reached his present condition at some point without the fall. We held that this testimony was not of sufficient certainty to sustain the judgment in favor of the injured patient. *Litera*, 692 N.E.2d at 901–02. Like the expert medical witness in *Litera*, Dr. Reecer uses the terms "possibly" and "may." Such testimony is not of sufficient certainty to show that Leffers' actions caused the aggravation of Topp's pre-existing injuries.

■■■ In a letter dated May 10, 2001, Dr. Schreier wrote, "This examination and history in this 54–year–old woman reveals evidence for subacute chronic mechanical spinal dysfunction, *apparently* due to the motor vehicle accident." Appellant's App. at 153 (emphasis added). Later, Dr. Schreier wrote that Topp "*appears* to have occipital neuralgia from a motor vehicle accident." *Id.* at 155 (emphasis added). On March 13, 2003, Dr. Schreier wrote, "I first saw Yvonne Topp in physical medicine clinic on 5/10/01 due to complaints suffered in a motor vehicle accident injury 11/24/00." *Id.* at 156. This last statement merely recounts facts and does not draw any conclusions regarding the cause of Topp's injuries. The first two statements draw conclusions about the cause of Topp's injuries, but these conclusions are prefaced by the use of the words "apparently" and "appears." Dr. Schreier's use of the words "apparently" and "appears" indicate that he believed it was possible that the November 2000 accident caused the aggravation of Topp's pre-existing injuries, but that he was not certain of this. Thus, Dr. Schreier's opinions are not of sufficient medical certainty to show that Leffers' actions caused the aggravation of Topp's pre-existing injuries.

■ Although Dr. Reecer and Dr. Schreier's opinions, standing alone, are not sufficient to sustain Topp's burden on the element of causation because they lack reasonable medical certainty, Topp argues that their opinions, in conjunction with her own testimony, are sufficient evidence to prove causation. To support her position, Topp relies upon *Smith v. Beaty*, 639 N.E.2d 1029 (Ind.Ct.App.1994). In that case, Smith was driving his van on a state highway when one of his tires went flat. Smith lost control of the van, and it rolled over twice, coming to rest upside-down in the eastbound lane of traffic. Marti Wells stopped her car to see if Smith needed assistance. When Wells approached the van, she found Smith trapped inside by his seatbelt. Before Smith could be extricated from the van, a semi truck driven by Beaty came upon the scene of the accident and struck Smith's van spinning it onto its side. After the accident, Smith was taken to the hospital where he was treated for five fractured ribs. Smith brought a negligence action against Beaty. At trial, Beaty filed a motion for judgment on the evidence, which the trial court granted.

On appeal, Beaty argued that the trial court properly granted his motion for judgment on the evidence because Smith failed to present any expert evidence that his injuries were proximately caused by Beaty's actions. At trial, Smith's expert witness, Dr. J.F. Pangan, testified that "he could not say to a reasonable degree of medical certainty whether the rolling of the van or the impact of the semi caused Smith's rib injuries." *Id.* at 1034. Despite this, Smith argued that he "presented sufficient objective evidence that his injuries were caused by the semi's impact to allow the submission of the case to the jury." *Id.* at 1033. We began by stating that "[c]ausation in a negligence case need not always be proven by expert testimony. Causation may be proven by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than mere speculation." *Id.* at 1034. Citing *Daub*, we said, "When the issue of causation is within the understanding of a lay person, testimony of an expert witness is not necessary." *Id.*

In considering the evidence, we noted that Smith testified that he only felt severe pain after Beaty's semi truck hit his van. Smith stated that prior to Beaty's semi hitting his van, he was able to move around inside the van without experiencing any rib pain. Wells testimony corroborated Smith's. She indicated that when she first arrived at the scene, Smith did not complain of any pain. After Beaty's semi hit the van, though, Wells said Smith was in pain, was holding his ribs, and told her that he thought his ribs were broken. Smith also introduced into evidence x-rays taken after the accident that showed he had rib fractures, and a medical report made by Dr. R.S. Wright that stated Smith suffered major injuries to his chest after the second impact.

We first concluded that in this case a lay person "would be competent to draw inferences from these facts and determine that Beaty's conduct was a cause of Smith's injuries." *Id.* We determined that "[f]rom Smith's own testimony, the jury could have inferred causation." *Id.* We recognized that "standing alone, an opinion which lacks reasonable probability is not sufficient evidence by itself to support a verdict." *Id.* However, we noted that " 'an expert's opinion that something is 'possible' or 'could have been' may be sufficient to sustain a verdict or award' when rendered in conjunction with other, probative evidence establishing the material factual question to be proved." *Id.* (quoting *Noblesville Casting Div. of TRW, Inc. v. Prince*, 438 N.E.2d 722, 731 (Ind.1982)). We concluded that

> Smith's testimony about his injuries, together with the testimony of Wells and Dr. Pangan and Smith's medical records, established a prima facie showing that Smith's rib injuries were caused by the impact from Beaty's semi. Indeed, Smith and Wells' lay report of the facts went beyond a mere hypothesis of causation but was sufficient for the jury to infer without resort to speculation that Beaty caused Smith's injuries.

*Id.* at 1035. We determined that Smith had carried his burden on the element of causation "by presenting evidence of probative value that Beaty's breach of the duty to keep a proper lookout, which resulted in the semi's collision with the van, was a cause in fact of his injuries." *Id.* We ultimately held that the trial court erred in granting Beaty's motion for judgment on the evidence. *Id.*

*Smith* is distinguishable. The nature of Smith and Topp's injuries is different, which means that the type and quality of evidence they must introduce to prove causation is different. During the accident,

Smith injured his ribs. This is an objective injury because it was directly observable by Smith's physicians and is reproducible through a physical exam. Based on this, we concluded that the jury could have inferred causation from Smith's testimony alone, and that the testimony of an expert witness was unnecessary. *Id.* at 1034. However, Topp's injuries were subjective in nature, and, thus, Topp's testimony alone, without any testimony from an expert medical witness, would not be sufficient to prove causation. *Daub,* 629 N.E.2d at 877–78. Because the nature of Smith and Topp's injuries is different and because the evidence they must introduce to prove causation is different, our conclusion that Smith presented sufficient evidence to prove causation does not indicate that Topp has also produced sufficient evidence to prove causation.

Furthermore, Topp's testimony, when considered in conjunction with Dr. Reecer and Dr. Schreier's opinions, was not sufficient evidence to prove that Leffers' actions caused the aggravation of Topp's pre-existing injuries. Dr. Reecer and Dr. Schreier's opinions, like Dr. Pangan's testimony in *Smith,* are insufficient to prove causation because they lack reasonable medical certainty. Topp's testimony, unlike Smith's, amounts to nothing more than her own hypothesis that the aggravation of her pre-existing injuries was caused by the November 2000 accident. Smith testified that immediately after his van was struck by Beaty's semi, he felt intense pain and told Wells that he thought his ribs were broken. Here, Topp testified that after Leffers' car hit her vehicle, she hit her head. Topp said she felt intense pain in her head, but did not indicate that she felt any pain in her neck, mid-back, or lower back. No third party present at the scene of the accident testified that after the accident Topp complained of pain in her neck, midback, or lower back. Unlike Smith,

Topp refused to be taken to the hospital immediately after the accident, and none of the medical records she introduced concluded that the aggravation of her pre-existing injuries was due to the accident. The day after the accident, Topp stated that she felt pain in her neck, mid-back, and lower back. The temporal congruity between this pain and the accident is some evidence of causation, but Topp did not present any expert testimony concluding that these injuries were due to the accident. Topp testified that, after the accident, the pain from her pre-existing injuries was greater, but she presented no expert testimony that concluded that this increase in pain was caused by the November 2000 accident.

Topp's testimony, at best, creates the mere possibility that the aggravation of her pre-existing injuries was caused by the November 2000 accident. Evidence establishing the mere possibility of cause is not sufficient by itself to support a verdict. *Id.* at 877. Topp's testimony in conjunction with Dr. Reecer and Dr. Schreier's opinions is not sufficient to prove causation because Topp's testimony merely establishes the possibility of causation and the doctors' opinions lack reasonable medical certainty. Therefore, the trial court properly granted Leffers' motion for a directed verdict because Topp did not present sufficient evidence to prove that Leffers' actions caused the aggravation of her pre-existing injuries.

*Conclusion*

The trial court properly granted Leffers' motion for a directed verdict because Topp did not present substantial evidence to support the causation element of her negligence claim. The trial court's order granting Leffers' motion for a directed verdict is therefore affirmed.

Affirmed.

KIRSCH, C.J., and MAY, J., concur.

*ORDER*

This Court heretofore handed down its opinion in this appeal on October 21, 2005, which affirmed the decision of the trial court and which decision was marked Memorandum Decision, Not for Publication.

Comes now the Appellee, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein that the decision would clarify for Indiana courts when expert testimony is required to present a factual issue on proximate causation for the jury and when expert testimony, even if submitted, is sufficient to raise a factual issue.

The Court having examined said Motion, having reviewed its opinion in this appeal and being duly advised, now finds that said Motion should be granted.

IT IS THEREFORE ORDERED that the Appellee's Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion in this appeal heretofore handed down in this cause on October 21, 2005, marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.