## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Matthew R. Kaczmarek
Michael W. Shakour
Sopko, Nussbaum, Inabnit &
Kaczmarek
South Bend, Indiana

ATTORNEY FOR APPELLEES

J. Thomas Vetne
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Susan Mwangi and Joe Mwangi, <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Nicholas Bobelinski and Classic Seamless Gutter, Inc., <br> *Appellees-Defendants.* | August 11, 2020 <br><br> Court of Appeals Case No. 20A-CT-528 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Margot F. Reagan, Judge <br><br> Trial Court Cause No. 71D04-1603-CT-167 |

**Kirsch, Judge.**

[1] Susan Mwangi ("Susan") and Joe Mwangi[1] ("Joe'), collectively ("the Mwangis") appeal the trial court's entry of judgment in favor of Nicholas Bobelinski ("Bobelinski") and Classic Seamless Gutter, Inc. ("Seamless Gutter"). The Mwangis raise the following two issues for our review:

    I.     Whether the trial court abused its discretion when it denied Susan's requests for a continuance; and

    II.    Whether the trial court erred by granting Bobelinski and Seamless Gutter's motion for a directed verdict.

[2] Finding no error, we affirm.

## Facts and Procedural History

[3] On May 22, 2014, Susan was stopped[2] at a traffic light at the intersection of South Bend Avenue and Twyckenham Avenue in South Bend, Indiana when her vehicle was hit by Bobelinski, who was driving a vehicle owned by his employer, Seamless Gutter. *Appellant's App. Vol. 2* at 17, 92, 97.[3] At the time of

---

[1] Susan's husband, Joe, has resided in Kenya throughout the underlying litigation and has not been able to participate in any of the proceedings due to his pending immigration petition not yet being processed. *See Appellant's Br.* at 8 n.2. Thus, we refer primarily to Susan.

[2] At trial, Susan claimed she was driving when the accident occurred, but both her complaint and her Appellant's Brief state that she was stopped when the accident occurred. *Appellant's App. Vol. 2* at 17-19; *Appellants Br.* at 8.

[3] The Mwangis have placed both the January 23, 2020 pretrial transcript and February 3, 2020 bench trial transcript in their Appellant's Appendix. *See Appellant's App. Vol. 2* at 47-116. They have also produced the pretrial transcript in a separate transcript volume but have not done the same for the bench trial transcript. *See Tr. Vol. 2* at 1-27. We cite to the January 23, 2020 pretrial transcript as "*Tr. Vol. 2*" and to the February 3, 2020 bench trial transcript as "*Appellant's App. Vol. 2*." We remind counsel that Appellate Rule 50(F)

the accident, Susan, who is from Kenya, was in the United States studying toward a master's degree in Humanitarian Aid from Fordham University. *Tr. Vol. 2* at 13. Susan suffered injuries to her head and neck, saying that she "saw stars," "blacked out completely," and "didn't know where [she] was." *Appellant's App. Vol. 2* at 100. Susan recalled being asked if she wanted to go to the hospital after the accident but decided to not go to the hospital, preferring instead to "listen to [her] body." *Id.* Three days after the accident, Susan began to experience pain and went to Dr. Smita Patel ("Dr. Patel") for treatment. *Id.* at 101. Dr. Patel gave Susan muscle relaxers and pain medication to treat her pain. *Id.* Susan did not take the muscle relaxers or pain medication, opting instead for cold packs, herbs, and deep-breathing exercises for the pain.[4] *Id.* at 101-03.

[4] On March 28, 2016, the Mwangis filed a complaint alleging, among other things, that Bobelinski was acting within the scope of his employment with Seamless Gutter when he caused the accident and requesting a jury trial.[5] *Id.* at 17-19. At the time the complaint was filed, Susan was represented by the law firm of Blackburn & Green. *Id.* Her then-counsel filed a motion to withdraw appearance on December 20, 2017, citing the Indiana Rules of Professional

provides that "[b]ecause the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix"

[4] At some point, Susan was referred to Dr. Walter Langheinrich, who is a neurosurgeon, and has also been treated by two chiropractors, Dr. Toby Mitchell and Dr. Rahim Salehmohamed, who is located in California. *Appellant's App. Vol. 2* at 104-07; *Appellant's Br.* at 9.

[5] Joe alleged loss of services and consortium of Susan as a result of the accident. *Appellant's App. Vol. 2* at 18.

Conduct as the reason. *Id.* at 22. On January 2, 2018, the trial court granted the motion to withdraw appearance. *Id.* at 26.

[5] After Susan's first counsel withdrew, the counsel for Bobelinski and Seamless Gutter filed a motion to dismiss the complaint with prejudice on January 8, 2018, citing failure to prosecute under Indiana Rule of Trial Procedure 41(E) as the basis for dismissal. *Id.* at 27-28. On January 24, 2018, the trial court issued an order dismissing Susan's complaint without prejudice. *Id.* at 29. She then hired the law firm of Pfeifer Morgan and Stesiak to represent her. *Id.* at 30. On February 26, 2018, her second counsel appeared on her behalf and filed a motion to reinstate the complaint. *Id.* at 30-32. The following day, the trial court granted the motion to reinstate, and Susan's complaint was reinstated. *Id.* at 33. On January 10, 2019, the trial court issued a pretrial order, which, among other matters, set a jury trial for December 3, 2019. *Id.* at 34.

[6] On November 13, 2019, Susan's second counsel filed a motion to withdraw appearance. *Id.* at 36-37. The motion stated that the attorney-client relationship had been irreparably breached, that counsel could no longer provide adequate representation, and that Susan had "refused to heed counsel's advice with respect to her case." *Id.* at 36. The trial court granted the motion to withdraw on November 22, 2019 and, in that same order, gave Susan one month to retain new counsel. *Id.* at 38. The trial court's order also rescheduled the December 3, 2019 jury trial to February 3, 2020, over defense counsel's objection, and scheduled a final pretrial conference for January 23, 2020. *Id.*

[7]     On December 23, 2019, Susan filed a pro se motion for enlargement of time to continue the February trial date and asking for thirty days to secure trial counsel. *Id.* at 39. She attached a letter dated December 20, 2019 from Richard LaSalvia ("LaSalvia"), a lawyer she had attempted to hire. *Id.* at 40. LaSalvia was unable to represent Susan due to time constraints and a medical issue related to a member of LaSalvia's family. *Id.* Counsel for Bobelinski and Seamless Gutter objected to Susan's motion, and on January 8, 2020, the trial court denied the motion. *Id.* at 12, 40.

[8]     On January 17, 2020, the trial court received a letter from Susan, titled "REQUEST FOR AN ALTERNATE JUDGE[,]" which stated as follows:

> Reasons for requesting another Judge highlighted below:
>
> A. Judge has denied request for extension
>
> B. My lawyer voluntarily withdrew his representation
>
> C. Unable to get a lawyer because of the short time to trial date
>
> D. Current Judge has given a reason for denial for extension, it is my belief this Judge is biased against my case or like the other professionals has misunderstood my cry for further treatment with neck & brain experts
>
> E. Not mentally stable to go through trial, I feel abandoned and misunderstood by the treating physician, the two lawyers who have voluntarily quit on me, my car insurance company that denied me treatment with experts and now the current Judge

F.  I request the court for more time to hire a lawyer whose letter
is required by the medical doctor prior to his evaluation and
treatment

G.  I request the court to allow medical report from the Los
Angeles chiropractic doctor

H.  And request the court to allow report from an expert
independent medical examiner doctor in neck & brain trauma

*Id.* at 43.   Counsel for Bobelinski and Seamless Gutter objected to the requests,
and on January 22, 2020, the trial court issued an order denying Susan's
requests.  *Id.* at 14-15.

[9]   On January 23, 2020, the trial court held a final pretrial conference.  *Id.* at 10.
Susan appeared pro se at the hearing and explained how she perceived her case:

I see two parts of my case that is the medical case or treatment
for my brain activities to be better stable and to be coherent in the
way I do things, at least to get it to the level where I used to be
before the accident.  And I don't have anybody else here to help
me except me and my son.

So there is a lot of part -- then getting to the part of the -- my --
the two lawyers I've had who wanted to close the case and that I
would say they're not into the treatment or into my well being,
my getting better so I'm there in the middle.  And that has been
the problem.

In fact, if I were to be asked, I am not interested in my case going
for trial or coming here to you.  If I can be given time to go
through the treatment, then whoever I'll have as a lawyer and

him can now come and see whatever can be given or not be given.

*Tr. Vol. 2* at 8-9.

[10] The trial court indicated that it wanted the case to proceed as scheduled on February 3, 2020 but as a bench trial and not as a jury trial, stating that it was "not going to continue this [case] anymore." *Id.* at 11-12. Susan stated that she was "not even interested to be given the money people get when they win a case. That is not in me at all[,]" but that she was "requesting to be given time and I have to work to get the money to pay the doctors" for treatment. *Id.* at 13, 14. The following exchange then ensued:

> THE COURT: All right. Well, back to my question, must we go forward with a jury trial or can we do a bench trial on February 3rd?
>
> MS. MWANGI: You know the reason why I hesitate is because I don't have a professional medical report to support my case and the reason is it is very, very difficult and it has been proven it is difficult for anything --they may call it, it's just -- a simple group of flash but it's not (sic), it depends from individual to individual and what type of cars were involved in the accident. Because the minute your head is thrown that way and then that way (indicating) and you [lose] consciousness, as I did, and after -- from day one I lost consciousness for some time, that means somebody happened into your brain.
>
> THE COURT: Again, you've had years to get an opinion from a doctor and you -- again, you have to prove your case.

MS. MWANGI:  That's why I needed time. I needed --

THE COURT:  But you had time. That's the problem here.

MS. MWANGI:  I don't have the time.

THE COURT:  You had time.

MS. MWANGI:  March?

THE COURT:  We can't let the other party go on and on and on.  And I don't know what else to do at this point.

*Id.* at 21-22.  The trial court explained to Susan the differences between a bench trial and a jury trial, but Susan indicated that she did not understand the difference between the two types of trial, stating that her "brain is just cloudy." *Id*. at 26.  The trial court stated the case would proceed as a bench trial but if Susan was able to retain counsel before February 3, 2020, there could be a jury trial.  *Id.*

[11]    On February 3, 2020, the trial began.  *Appellant's App. Vol. 2* at 10.  Susan appeared without counsel, indicating that she would proceed pro se and that she was unable to find counsel because of the timing, which was "during the holy days and most of them were out" so she had "to wait until they came in. And the few [she] talked to and the ones who were willing to take the case, they said, one, it is very near to -- for trial -- pretrial and trial." *Id.* at 81.  Susan explained that she had attempted to retain LaSalvia as counsel, who was unable

to take her case, and that she had attempted to retain two other lawyers who were also unable to take her case. *Id.* at 82-83. The trial court also stated that it had attempted to connect Susan with the pro bono program in the county, but her income and assets were too high to qualify. *Id.* at 83. With respect to Susan's inability to retain counsel, the trial court observed:

> But, you know, . . . you've had no luck getting an attorney. I mean -- to continue this again for you to keep hunting for an attorney, it doesn't -- I mean it doesn't make any sense at this point. This accident happened six years ago. This case was filed four years ago. There was a time period where this case was dismissed because nothing had been done on the case. There was a mediation. It fell through. It's got a history that is very bothersome.

*Id.* at 84. The trial court asked Susan whether she wanted to waive her right to a jury trial and proceed with the bench trial, Susan stated "[w]e can proceed," and the trial court allowed Susan to do an opening statement. *Id.* at 88.

[12] In her opening statement, Susan stated that her case was about "an accident that happened on May 22nd, 2014" in which she was "hit from the rear," causing her body to bounce "backwards, forwards, and then -- backwards, forwards, and then backwards again[,]" and that she was "out of consciousness for a while." *Id.* at 92. Susan added that after a while she felt that she was "okay," did not "have any pain anywhere," and eventually called her doctor, who prescribed muscle relaxers, which she did not take. *Id.* at 93. She explained that she was sent to a neurosurgeon who "diagnosed [her] with occipital neuralgia and TOS, thoracic outlet syndrome." *Id.* at 94.

The trial court questioned Susan about the accident and Susan's medical treatment. *Id.* at 94-110. Susan attempted to introduce the police report of the accident and three reports from her doctors, which were all excluded from evidence on hearsay grounds. *Id.* at 112-13. Susan had no witnesses to testify on her behalf and concluded her case-in-chief. *Id.* at 114. Counsel for Bobelinski and Seamless Gutter immediately moved for a directed verdict on the basis that Susan had not presented any evidence of causation, which the trial court granted. *Id.* at 115. Susan now appeals.

## Discussion and Decision

## I. Was Denying a Continuance an Abuse of Discretion?

Susan argues that the trial court abused its discretion when it denied her requests to continue the trial. Upon a party's motion, "trial may be postponed or continued in the discretion of the court, and [a continuance] shall be allowed upon a showing of good cause established by affidavit or other evidence." Ind. Trial Rule 53.5. A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion. *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009). There is a strong presumption that the trial court properly exercised its discretion. *Id.* A trial court abuses its discretion when it reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *Evans v. Thomas*, 976 N.E.2d 125, 127 (Ind. Ct. App. 2012), *trans. denied*. A pro se litigant is held to the same established rules of procedure that trained counsel

is bound to follow. *Goossens v. Goossens,* 829 N.E.2d 36, 43 (Ind. Ct. App. 2005) (citing *Hess v. Hess,* 679 N.E.2d 153, 155 (Ind. Ct. App. 1997)).

[15] Susan contends that she demonstrated good cause for a continuance by contacting multiple attorneys to represent her between the date her second counsel withdrew from representation and the February 3, 2020 bench trial. She also maintains that she "lacked the mental capacity, legal education, experience, and language skills to proceed *pro se* in this trial." *Appellant's Br.* at 18. We recognize Susan's circumstances as a pro se litigant; however, we cannot agree that the trial court abused its discretion by denying her requests for a continuance to secure counsel.

[16] We note that "withdrawal of legal counsel does not entitle a party to an automatic continuance[.]" *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). In considering denials of motions to continue due to withdrawal of legal counsel, Indiana courts have analyzed whether: the withdrawal occurred at a crucial stage in the proceedings; the movant had engaged in dilatory tactics; the non-movant would have been prejudiced by a delay; new counsel would have had adequate time to prepare for trial taking into account the complexity of the case; the attorney's withdrawal was expected or foreseeable; the movant was at fault; and what efforts the movant took to secure new counsel. *See Hess*, 679 N.E.2d at 154; *Homehealth, Inc. v. Heritage Mut. Ins. Co.*, 662 N.E.2d 195, 198 (Ind. Ct. App. 1996), *trans. denied*.

[17]    Here, the accident occurred on May 22, 2014, and the complaint was initially filed on March 28, 2016 by Blackburn and Green. *Appellant's App. Vol. 2* at 17-19, 92, 97. Susan retained Blackburn and Green as counsel until the order granting withdrawal was issued on January 2, 2018. *Id.* at 26. The case was dismissed and then was reinstated upon the request of by Susan's second counsel, who represented her until the order granting withdrawal was issued on November 22, 2019. *Id.* at 29-33, 38. By the time Susan's second counsel withdrew, the case had been active for approximately five and one-half years and her complaint had been on the trial court's docket for a little over three and one-half years.

[18]    The second attorney's withdrawal occurred approximately three weeks before the initial trial date of December 3, 2019, which is a crucial stage in the proceedings; however, the trial court provided Susan with thirty days to find counsel and rescheduled the trial to February 3, 2020. *Id.* at 38. There is no indication that Susan had purposefully engaged in dilatory tactics, but her complaint had been on the docket for nearly four years at the time of the February 3, 2020 bench trial. Indeed, the trial court observed:

> I mean -- to continue this again for you to keep hunting for an attorney, it doesn't -- I mean it doesn't make any sense at this point. This accident happened six years ago. This case was filed four years ago. There was a time period where this case was dismissed because nothing had been done on the case. There was a mediation. It fell through.

*Id.* at 83-84. As to whether Bobelinski and Seamless Gutter would have been prejudiced by further delaying the trial, the trial court noted that, in light of the length of the time the case had been pending, to grant Susan a continuance was "not fair to the other party." *Tr. Vol. 2* at 18. Susan appeared to have differing objectives about her case than either of her previous counsels as both withdrew on the basis that she was not following their advice, but there is nothing in the record to indicate whether her second attorney's withdrawal before the trial was otherwise expected or foreseeable. *Appellant's App. Vol. 2* at 22, 36. We acknowledge that Susan attempted to secure new counsel and reached out to three attorneys, none of whom were able to take her case. *Id.* at 39-40, 81-83. Under the circumstances of this case, including the nearly four years that had elapsed since the March 2016 filing of the complaint, her failures to follow the advice of her two previous attorneys, and her eventual decision to proceed with the bench trial, we cannot say that Susan demonstrated good cause to continue the trial. Thus, we find no abuse of discretion in the trial court's denial of Susan's requests to continue the trial to secure counsel.[6] *See Gunashekar*, 915 N.E.2d at 956 (affirming the trial court's denial of a motion to continue the

---

[6] To the extent Susan argues that the result in here is controlled by *Hess*, we disagree. In *Hess*, a panel of this court concluded that the husband in a divorce case demonstrated good cause for a continuance when his counsel withdrew five days before trial. 679 N.E.2d at 154-55. Also, in *Hess*, husband's counsel withdrew five days before trial, forcing husband to appear pro se at trial. *Id.* at 154. Husband explained that he had unsuccessfully tried to find new counsel and nothing in the record showed husband engaged in dilatory tactics, and he was deprived of counsel at the most crucial stage in the proceedings. *Id.* at 155. Here, unlike the husband in *Hess*, Susan had previously retained the services of attorneys from two different law firms, her complaint had been pending for nearly four years (as opposed to two years in *Hess*), and the trial court continued the December 3, 2019 to February 3, 2020 and gave Susan thirty days to secure counsel following the November 22, 2019 withdrawal of her second counsel. *Hess* does not require reversal in this case.

bench trial); *Fetner v. Maury Boyd & Assocs., Inc.*, 563 N.E.2d 1334, 1338 (Ind. Ct. App. 1990) (affirming the trial court's denial of the defendant's motion to continue to hire counsel and holding that the denial of the motion to continue did not constitute a violation of due process), *trans. denied.*

## II.  Did Susan Meet Her Evidentiary Burden?

[19]  Susan also argues that she met her evidentiary burden and that the trial court improperly dismissed her case.  Counsel for Bobelinski and Seamless Gutter moved for a directed verdict and, on appeal, recognize that because this was a bench trial, it is properly reviewed as an Indiana Trial Rule 41(B) motion for involuntary dismissal.  *See Bowyer v. Ind. Dep't of Natural Res.*, 944 N.E.2d 972, 981 n.10 (Ind. Ct. App. 2011).  "A Trial Rule 41 motion to dismiss tests the sufficiency of the plaintiff's case in chief."  *Brown v. Guinn*, 970 N.E.2d 192, 195 (Ind. Ct. App. 2012).  When reviewing a ruling on a Trial Rule 41(B) motion to dismiss, we apply the following standard of review:

> The grant or denial of a motion to dismiss made under Trial Rule 41(B) is reviewed under the clearly erroneous standard.  In reviewing a motion for involuntary dismissal, this court will not reweigh the evidence or judge the credibility of the witnesses. We will reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the lower court.

*Todd v. State,* 900 N.E.2d 776, 778 (Ind. Ct. App. 2009) (quoting *Thornton-Tomasetti Eng'rs v. Indianapolis-Marion Cty. Pub. Library,* 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006)).

[20] Susan contends that she carried her evidentiary burden by proving that she was rear-ended, that she suffered injuries in the accident that they were caused by Bobelinski, and that equity favors she receive her day in court. Bobelinski and Seamless Gutter maintain that Susan did not meet her evidentiary burden and that the trial court was correct to grant their motion.

[21] "The tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." *Martin v. Ramos*, 120 N.E.3d 244, 249 (Ind. Ct. App. 2019) (quoting *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002)). To satisfy his or her burden of proof, a plaintiff must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of the injury. *Foddrill v. Crane*, 894 N.E.2d 1070, 1077 (Ind. Ct. App. 2008), *trans. denied*. "Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation." *Id.*

[22] The evidence most favorable to Susan's case shows that on May 22, 2014 she was in an accident in which her vehicle was rear-ended in good weather conditions by the vehicle Bobelinski was driving for Seamless Gutter. *Appellant's App. Vol. 2* at 17-19, 97. While Susan presented evidence that she was involved in an accident with Bobelinski, she stated that she could "only

assume maybe [Bobelinski] was doing something else. Otherwise, he could have been preparing to stop." *Id.* at 98. There is no evidence that Bobelinksi's negligence caused the accident. A rear-end collision, standing alone, does not raise a presumption or authorize an inference of negligence. *See Estate of Carter v. Szymczak*, 951 N.E.2d 1, 3 (Ind. Ct. App. 2011) (citing *Haidri v. Egolf*, 430 N.E.2d 429, 432 (Ind. Ct. App. 1982)).

[23] As to causation, we agree with Susan that causation in a negligence case need not always be proven by expert medical testimony. *See Martin*, 120 N.E.3d at 250 (observing that "[w]hen an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." (quoting *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994), *trans. denied*)). Here, there is no indication that Susan's injuries were objective; rather, her injuries were primarily subjective as Susan complained of pain in her head and neck area and has received treatment for those ailments. *Appellant's App. Vol. 2* at 99-108. We have held that where a plaintiff's injuries are subjective in nature, expert medical testimony is required to prove causation. *Topp v. Leffers*, 838 N.E.2d 1027, 1033 (Ind. Ct. App. 2005); *see also Martin*, 120 N.E.3d at 250 (explaining the difference between subjective and objective injuries). Because Susan did not elicit expert testimony to establish that the accident caused her subjective injuries, she failed to carry her burden of showing that the accident caused those subjective injuries.

Other facts undermine Susan's claim that the accident caused her injuries. Susan did not seek medical attention immediately after the accident and instead waited three days before seeing Dr. Patel, after which she declined the use of muscle relaxers and pain medication to treat her pain. *Id.* at 101-02. Susan stated at the bench trial that she was suffering from thoracic outlet syndrome and occipital neuralgia but did not provide any medical reports or testimony to show a link between the accident and those conditions. *Id.* at 94, 106-07. Indeed, there is nothing in the record outside the temporal proximity of the accident and occurrence of Susan's stated medical conditions to indicate whether her injuries were caused by the accident; thus, Susan has failed to meet her burden to prove that the accident caused her injuries. *See Turner v. Davis*, 699 N.E.2d 1217, 1220 (Ind. Ct. App. 1998) (noting that a plaintiff who claimed that a sleep disorder began after an auto accident demonstrated only a temporal relationship that was insufficient to present a question to the trier of fact without any medical expert testimony on causation). While we acknowledge that Susan faced challenges in representing herself at the bench trial, we cannot say that Susan was denied her day in court or that the trial court clearly erred in dismissing the action.

Affirmed.

Pyle, J., and Tavitas, J., concur.