

FILED

Jun 19 2023, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Daniel H. Pfeifer
James P. Barth
Pfeifer Morgan & Stesiak
South Bend, Indiana

ATTORNEY FOR APPELLEE

J. Thomas Vetne
Hunt Suedhoff Kearney, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey Lindke,

*Appellant-Plaintiff,*

v.

David Combs,

*Appellee-Defendant.*

June 19, 2023

Court of Appeals Case No.
22A-CT-2662

Appeal from the St. Joseph
Superior Court

The Honorable Jenny Pitts Manier,
Judge

Trial Court Cause No.
71D05-2006-CT-210

**Opinion by Judge Riley**
Chief Judge Altice and Judge Pyle concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Jeffrey Lindke (Lindke), appeals the trial court's entry of judgment on the evidence in favor of Appellee-Defendant, David Combs (Combs).

We affirm.

## ISSUE

Lindke presents this court with one issue, which we restate as: Whether the trial court abused its discretion when it entered judgment on the evidence on some of Lindke's claims due to insufficient evidence of causation.

## FACTS AND PROCEDURAL HISTORY

On October 31, 2018, Lindke was stopped on Jefferson Street in Mishawaka, Indiana, preparing to make a left turn when a car driven by Combs collided with the back of Lindke's truck. Immediately following the collision, Lindke did not report any injuries or pain to law enforcement or to Combs. Lindke did not immediately seek medical treatment.

On June 22, 2020, Lindke filed his Complaint against Combs, advancing claims of negligence and loss of consortium. On October 10, 2022, the trial court convened a jury trial on Lindke's Complaint. At trial, Lindke proceeded on a theory that, as a result of the collision, he had sustained injuries in the form of migraine headaches which he contended started immediately after the collision and lasted two months, aggravation of pain from pre-existing conditions in his

lower back and legs, and pain in his neck and hands. Lindke also sought damages for a labral tear to his right shoulder. Combs conceded fault in the collision and stipulated to the admissibility of summaries of Lindke's medical treatment and billing records.

[6] Evidence admitted at trial indicated that in 1999, 2009, and 2010, Lindke reported severe headaches that sometimes rendered him sensitive to light. In February 2014, Lindke experienced frequent headaches and ear pain that prevented him from sleeping, and in November 2015, Lindke was diagnosed with migraine without aura after having reported experiencing severe headaches four times per year. Lindke testified at trial that his migraines had improved after switching medications, but his medical record summary indicated that as late as August 3, 2018, approximately three months before the collision, Lindke had reported experiencing a severe migraine that had lasted for two days and that had affected his vision. Lindke was advised to seek treatment at a local hospital. Lindke also testified that he had sustained injuries to his lower back and legs during his service in the United States military and that he had eventually received a 60% disability rating. As a result of his military injuries, Lindke experienced constant nerve-related pain issues in his legs and lower back. Lindke had also suffered a slip and fall accident in 2013 that resulted in back injuries. Lindke last reported pain in his lower back and legs on October 17, 2018, a little under two weeks before the collision. In April 2001, Lindke had presented with complaints of neck pain lasting for several weeks which had become sharp, and he was diagnosed with cervical strain.

Lindke was seen in May 2001 for persistent neck pain which was then diagnosed as chronic neck and upper back strain. Lindke reported neck pain in March 2008, a pulled neck muscle in September 2008, and ongoing neck pain in October 2008. Lindke also reported neck pain in June 2014. In addition, Lindke's medical summary indicated that he complained of pain in his hands as early as October 2008 and continued to do so in March 2009, when he reported pain in the knuckles of the pointer fingers of both hands, with swelling, tingling, and burning sensations in his fingertips. In June 2014, Lindke was again experiencing pain in his hands. Just days before the collision, on October 22, 2018, Lindke had an x-ray of his right hand in an attempt to address the pain.

[7] The following evidence was admitted at trial regarding Lindke's treatment after the collision. Lindke testified that, immediately after the collision, he had a severe headache and that the next day he had pain in his lower back, legs, neck, and hands. Three weeks after the accident, Lindke sought chiropractic treatment from Dr. Donald Warren (Dr. Warren) at the Warren Chiropractic Center. On December 18, 2018, Lindke was also treated by Dr. Alfred Pinto (Dr. Pinto) of Spine & Joint Associates. On November 26, 2019, Lindke went to orthopedic surgeon Dr. Charles Ware (Dr. Ware) to address carpel tunnel syndrome in his hands and fingers, and Dr. Ware performed surgery to alleviate those conditions. On December 1, 2020, Dr. Ware began treating Lindke for what was ultimately diagnosed as the labral tear to Lindke's right shoulder. On December 21, 2020, Dr. Ware performed out-patient arthroscopic surgery on Lindke's right shoulder.

[8] Dr. Ware was the only medical expert who testified at trial. Dr. Ware offered his opinion that Lindke's right shoulder injury was caused by the collision. When asked if the carpel tunnel syndrome in Lindke's hands had been caused by the collision, Dr. Ware testified that he did not have adequate information to render an opinion. Dr. Ware did not offer any testimony that the pain in Lindke's lower back, legs, neck, hands, or his migraines had been caused by the collision.

[9] At the close of Lindke's case, Combs moved for judgment on the evidence, seeking to remove from the jury's consideration all injuries and damages except those related to Lindke's right shoulder injury, arguing that Lindke had failed to offer sufficient evidence of causation related to any other injury. The trial court granted Combs' motion. The trial court subsequently provided the jury with a final instruction that it could only award damages for pain and suffering that were supported by the evidence and that it could only consider the medical expenses supported by Dr. Ware's testimony. The jury returned zero-dollar verdicts on Lindke's remaining claims.

[10] Lindke now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Standard of Review*

[11] Lindke contends that the trial court erred when it granted Combs' motion for judgment on the evidence on all his claims except for those based on the injury to his right shoulder. Indiana Trial Rule 50(A) provides that judgment may be

entered "[w]here all or some of the issues in a case tried before a jury . . . are not supported by sufficient evidence[.]" A motion for judgment on the evidence tests the legal sufficiency of the evidence. *Scholl v. Majd*, 162 N.E.3d 475, 479 (Ind. Ct. App. 2020). In reviewing the grant of a motion for judgment on the evidence, we apply the same standard as the trial court: We review all the evidence in the light most favorable to the non-movant, and we draw all reasonable inferences in favor of the non-movant. *Id*. "'[T]he motion should be granted only where there is no substantial evidence to support an essential issue in the case. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper.'" *Id*. (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)).

## II. *Causation*

[12] The elements of a negligence claim are (1) a duty to the plaintiff on the part of the defendant; (2) a breach of that duty; and (3) injury to the plaintiff caused by the breach. *Evansville Auto., LLC v. Labno-Fritchley*, 207 N.E.3d 447, 454 (Ind. Ct. App. 2023). Here, Combs conceded at trial that he was at fault for the collision, leaving causation and damages as the only issues to be submitted to the jury. The trial court granted Combs' motion for judgment on the evidence, allowing only Lindke's claims regarding his right shoulder injury to go before the jury based on its conclusion that Lindke had failed to present adequate evidence that any of the other injuries alleged were caused by the collision.

[13] "An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a

plaintiff has suffered." *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994), *trans. denied*. This element of a negligence claim requires at least a showing of causation in fact, meaning that the claimed harm would not have occurred "but for" the defendant's action. *Id*. The plaintiff's burden is not met with evidence based "merely upon supposition or speculation[,]" nor is it met with "evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability[.]" *Id*. Indiana recognizes two types of injuries in a personal injury case: subjective and objective. An injury is 'objective' if "it can be discovered through reproducible physical exam or diagnostic studies that are independent of the patient telling you what they feel or where they feel it." *Foddrill v. Crane*, 894 N.E.2d 1070, 1078 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied*. An injury is 'subjective' if it is "perceived or experienced by a patient and reported to the patient's doctor but is not directly observable by the doctor." *Id*. (quotation omitted). We have recognized that, ordinarily, the issue of the causal connection between "a permanent condition, an injury, and a pre-existing affliction or condition is a complicated medical question" and that "[w]hen the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." *Daub*, 629 N.E.2d at 877-78.

[14] We find *Topp v. Leffers*, 838 N.E.2d 1027 (Ind. Ct. App. 2005), *trans. denied*, to be instructive. Topp was a passenger in a car that was rear-ended by Leffers, causing Topp to hit her head. *Id*. at 1029. After the collision, Topp immediately felt pain in her head, but she refused treatment. *Id*. The day after

the collision, Topp felt pain in her neck, mid-back, and lower back. *Id.* Topp went to two chiropractors for treatment, one of whom she had previously seen for pain in her neck, mid-back, and lower back resulting from several prior car accidents Topp had experienced. *Id.* One of Topp's chiropractors noted in her medical records that she had injuries "*apparently* due to the motor vehicle accident" at issue; Topp "*appears*" to have injuries from a motor vehicle accident; and that he had first seen Topp "due to complaints suffered in a motor vehicle accident injury [on the date of Leffers' collision]." *Id.* at 1034 (emphasis in the original). Topp sued Leffers, seeking damages for aggravation to her pre-existing injuries. *Id.* at 1029-30. An independent doctor who examined Topp and reviewed her medical records noted that Topp had prior spine complaints "which could possibly have been aggravated by the accident" and that her pre-existing spine complaints "may have" been aggravated by the collision. *Id.* at 1030. Regarding the 5% impairment rating assigned to Topp by one of her chiropractors, the independent doctor could not specifically relate the impairment rating to Leffers' collision. *Id.* At trial, neither of Topp's chiropractors testified, but the deposition and written report of the independent doctor were admitted, as well as portions of Topp's chiropractic treatment records, and Topp testified that the accident had aggravated her pre-existing neck and back issues. *Id.* The trial court granted Leffers' motion for judgment on the evidence, ruling that Topp had failed to present sufficient evidence that her claimed injuries were caused by Leffers' collision. *Id.* at 1030-31. On appeal, this court affirmed, citing *Daub* and concluding that, because Topp's injuries were subjective in nature and she had pre-existing injuries to the same

areas she now claimed were injured in the collision, discerning the causal relationship between the accident involving Leffers and her claimed injuries was a complicated medical question beyond the understanding of a lay person, that expert testimony was required to show causation, and that Topp's testimony alone was insufficient to prove causation without expert medical testimony. *Id.* at 1033. In concluding that the opinions of the independent doctor and the statements in Topp's medical records by her chiropractor were insufficient to put her claims before the jury, we observed that "'expert medical opinion couched in terms less than that of a reasonable degree of medical certainty; such as 'possible,' 'probable,' or 'reasonably certain,' are admissible and do have probative value. However, such medical testimony standing alone, unsupported by other evidence, is not sufficient to support a verdict[.]'" *Id.* at 1034 (quoting *Colaw v. Nicholson*, 450 N.E.2d 1023, 1030 (Ind. Ct. App. 1983)).

[15] We find *Topp* to be analogous to the case at hand. Here, the trial court did not allow Lindke's claims of pain in his head, back, legs, neck, and hands to go before the jury. Unlike the objective injury of the labral tear to Lindke's right shoulder, these were subjective complaints that related to areas of Lindke's body that were afflicted with pre-existing conditions which were long-term, on-going, and some of which were involved in Lindke's disability rating. Therefore, Lindke was required to present medical expert testimony to link those subjective injuries to the October 31, 2018, collision. *Topp*, 838 N.E.2d at 1033.

[16] Lindke seemingly agrees that expert testimony was required to show causation on his claims that were subject to the trial court's ruling, as he draws our attention to several portions of his medical treatment summary he contends were expert opinions on causation, such as Dr. Warren's note that Lindke was within "the acute inflammatory stage of care" from a car crash, Dr. Pinto's note that Lindke's neck and shoulder conditions were "secondary to" the collision, Lindke's referral to rehabilitation and acupuncture for neck and back pain secondary to a car crash, a note that Lindke had been involved in a car crash and suffered headaches and neck pain afterwards, and a note diagnosing Lindke with a soft tissue strain from the car crash. (Appellant's Br. pp. 8-9). However, these statements do not even meet the level of the precatory opinions we found insufficient in *Topp*, and none of this evidence constituted an expert medical opinion within a "reasonable degree of medical certainty" sufficient to put the injuries before the jury. *Topp*, 838 N.E.2d at 1034.

[17] Lindke further argues that judgment on the evidence was improper because Combs stipulated to the admission of his medical treatment and billing records and raised no objection to the foundation for their admission at trial. However, a stipulation to admissibility of an exhibit is not the equivalent of a stipulation or concession that the content of the exhibit meets the burden of proof on an element of a claim. In addition, Lindke's arguments regarding the adequacy of his billing summaries are irrelevant because we have concluded that he failed to prove the element of causation on his claimed subjective injuries. Because Lindke failed to present sufficient evidence linking his subjective injuries

involving pre-existing conditions to the October 31, 2018, collision, we do not disturb the trial court's ruling.

## CONCLUSION

[18] Based on the foregoing, we hold that the trial court acted within its discretion when it granted Combs' motion for judgment on the evidence.

[19] Affirmed.

[20] Altice, C. J. and Pyle, J. concur